ROSEMARY S. KOVACS, ET AL.,[1] PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket Nos. 5617–90, 5618–90,        Filed February 24, 1993.
5619–90, 5620–90.

---

[1] Cases of the following petitioners are consolidated herewith: Lois E. Kovacs, docket No. 5618–90; Mary Ann Kovacs, docket No. 5619–90; and Kathleen L. Kovacs, docket No. 5620–90.

*Dan A. Darnell* and *Robert B. Pierce,* for petitioners.
*Lynn M. Brimer,* for respondent.

OPINION

RUWE, *Judge:* Respondent determined deficiencies in petitioners' 1987 Federal income taxes and additions to tax as follows:

| Petitioner | Deficiency | Addition to tax sec. 6661 |
|---|---|---|
| Rosemary S. Kovacs | $220,572 | $55,143 |
| Lois E. Kovacs | 34,992 | 8,748 |
| Mary Ann Kovacs | 33,103 | 8,276 |
| Kathleen L. Kovacs | 30,184 | 7,546 |

Respondent has conceded the additions to tax under section 6661.[2]

The primary issue remaining for decision is whether "interest", which petitioners received pursuant to Michigan Compiled Laws (M.C.L.) section 600.6013 (1987) on "damages" that were awarded to them in a wrongful death action is excluded from gross income under section 104(a)(2). The deductibility of attorney's fees paid by petitioners will depend upon our resolution of the primary issue.

Petitioners resided in Fowlerville, Michigan, when they filed the petitions in this case.

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Rosemary S. Kovacs is the widow of Charles L. Kovacs, who was killed in 1976 when the truck that he was driving was struck by a locomotive operated by the Chesapeake & Ohio Railroad Co. (C&O). On September 25, 1978, Mrs. Kovacs, as administratrix of her husband's estate, filed a complaint in the Livingston County Circuit Court against C&O and others in accordance with M.C.L. section 600.2922 (the Michigan wrongful death statute).

On May 28, 1982, a Livingston County Circuit Court jury delivered a verdict in favor of Mrs. Kovacs, awarding dam-

---

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

ages in the amount of $1,500,000, later reduced to $995,000.[3] The Michigan Court of Appeals affirmed, as did the Michigan Supreme Court. *Kovacs v. Chesapeake & Ohio Ry.*, 351 N.W.2d 581 (Mich. Ct. App. 1984), affd. 397 N.W.2d 169 (Mich. 1986).

On March 17, 1987, C&O issued a check in the amount of $2,254,741.70, payable to Rosemary Kovacs, administratrix of the Estate of Charles L. Kovacs, deceased, and C. Robert Beltz, her attorney. The check for $2,254,741.70 was full payment for damages in the amount of $995,000, $6,134.53 in costs advanced, and $1,253,607.17 in interest on the damages, pursuant to M.C.L. section 600.6013. Pursuant to M.C.L. section 600.6013, interest was calculated from the commencement of the action until March 17, 1987, the date the judgment was satisfied.

By order of the trial court, Mrs. Kovacs received 66⅔ percent from the net proceeds and her daughters, Lois, Mary Ann, and Kathleen, each received 11⅑ percent. The total award of $2,254,741.70 was disbursed as follows:

| | |
|---|---|
| Attorney's fees | $749,535.72 |
| Costs advanced | 6,134.53 |
| Rosemary S. Kovacs | 999,380.96 |
| Mary Ann Kovacs | 166,563.50 |
| Lois Elizabeth Kovacs | 166,563.50 |
| Rosemary S. Kovacs, conservator of the Estate of Kathleen L. Kovacs, a minor | 166,563.50 |

Petitioners did not report any part of the amounts received on their 1987 Federal income tax returns, nor did they deduct any part of the attorney's fees. Respondent determined that petitioners should have included the interest portion of the award in gross income. Respondent allocated the interest among the recipients in proportion to the percentages in the trial court's order. Respondent also determined that, under section 212(1), petitioners were entitled to miscellaneous itemized deductions, subject to the 2-percent floor provided by section 67, for attorney's fees attributable to the interest portion of the award. Respondent allocated the

---

[3] The original verdict of $1,500,000 was reduced one-third due to Charles L. Kovacs' contributory negligence and further reduced by $5,000 for an amount previously paid by the Board of Road Commissioners for the County of Livingston to settle claims against the board.

amounts of interest income and deductions for attorney's fees, after taking into account the 2-percent floor, as follows:

| | Interest income | Attorney's fees |
|---|---|---|
| Rosemary S. Kovacs | $835,730 | $260,961.16 |
| Mary Ann Kovacs | 139,290 | 43,448.67 |
| Lois E. Kovacs | 139,290 | 43,251.67 |
| Kathleen L. Kovacs | 139,290 | 43,637.67 |
| Totals | 1,253,600 | 391,299.17 |

Petitioners filed a timely petition with this Court.

Section 61(a)(4) provides that gross income includes "interest". See *Kieselbach v. Commissioner,* 317 U.S. 399, 403-404 (1943); *Tiefenbrunn v. Commissioner,* 74 T.C. 1566, 1572 (1980); *Smith v. Commissioner,* 59 T.C. 107, 111-113 (1972); *Wheeler v. Commissioner,* 58 T.C. 459, 461-462 (1972); *Trez v. Commissioner,* T.C. Memo. 1976-141. Nevertheless, petitioners argue that the "interest" they received pursuant to M.C.L. section 600.6013 (1987)[4] is excludable from gross income under section 104(a)(2). Section 104(a)(2) provides that gross income does not include:

the amount of any *damages* received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness; [Emphasis added.]

For damages to be excludable under section 104(a)(2), the taxpayer's underlying claim must be for tortlike personal injury. *United States v. Burke,* 504 U.S. ___, ___, 112 S. Ct. 1867, 1870 (1992) (quoting sec. 1.104-1(c), Income Tax Regs.). The underlying claim in the instant case is for wrongful death, which clearly lies in tort, see Prosser & Keeton, Law of Torts, sec. 127, at 945-960 (5th ed. 1984), and it is undisputed that the amount designated as "damages" was awarded on account of a personal injury.

Petitioners take the position that the term "damages" in section 104(a)(2) should be construed expansively so as to

---

[4] Michigan Compiled Laws (M.C.L.) sec. 600.6013 (1987), provides:

(1) Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section * * *

(2) For complaints filed before June 1, 1980, in an action involving other than a written instrument having a rate of interest exceeding 6% per year, the interest on the judgment shall be calculated from the date of filing the complaint to June 1, 1980, at the rate of 6% per year and on and after June 1, 1980, to the date of satisfaction of the judgment at the rate of 12% per year compounded annually.

include interest on such damages. However, it is a longstanding rule of statutory interpretation that statutes providing exclusions from income must be construed narrowly. *Commissioner v. Jacobson,* 336 U.S. 28, 49 (1949). Section 104(a)(2) makes no mention of "interest". In order for us to accept petitioners' position—that interest on damages is excluded from income by section 104(a)(2)—we would have to interpret the term "damages" broadly and overrule previous opinions. This we decline to do.

There is no more persuasive evidence of the purpose of a statute than the words which the legislature used to give expression to its wishes. *United States v. American Trucking Associations,* 310 U.S. 534, 543 (1940). This maxim is especially true in interpreting tax statutes. *Crooks v. Harrelson,* 282 U.S. 55, 61 (1930); *United States v. Merriam,* 263 U.S. 179, 187-188 (1923); *Masonite Corp. v. Fly,* 194 F.2d 257, 260-261 (5th Cir. 1952). "[T]he words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses." *Crane v. Commissioner,* 331 U.S. 1, 6 (1947); *Miller v. Commissioner,* 93 T.C. 330, 338 (1989), revd. on other grounds 914 F.2d 586 (4th Cir. 1990). The term "damages" connotes the "compensation or satisfaction imposed by law for a wrong or injury". Webster's Third New International Dictionary (1986). The word "interest" in this context means "the price paid for borrowing [i.e., withholding] money". *Id.*[5] Petitioners had the right to, and did, demand payment of the damages when they filed their wrongful death claim. The Michigan courts upheld the validity of the claim and awarded damages plus statutory interest from the date the claim was filed. The statutory interest from the date on which petitioners filed their claim to the date of payment, therefore, falls within the established definition of interest.[6] In ordinary parlance, interest requires a

---

[5] See also *Kieselbach v. Commissioner,* 317 U.S. 399, 403-404 (1943) (interest constitutes "compensation for the delay in payment"); *Tiefenbrunn v. Commissioner,* 74 T.C. 1566, 1572 (1980) (interest component of a condemnation award constitutes amount separate from price of condemned property); *Smith v. Commissioner,* 59 T.C. 107, 111-113 (1972) (interest as compensation for delay in payment).

[6] Cf. *Albertson's, Inc. v. Commissioner,* 95 T.C. 415 (1990), where we held that amounts which were deducted as accrued interest in a transaction that did not involve borrowing, withholding of amounts due, or forbearance from demanding payment were not properly characterized as "interest" because there was not, and never had been, a present right to claim the so-called principal amount. *Albertson's* involved employment contracts, wherein the employer and employees agreed, in advance of the performance of any services, that part of the employees' compensation would be deferred until retirement or termination of employment. The amounts which were ulti-

principal sum. In the instant case, the damages are the principal sum on which the interest is owed, and ordinary usage suggests the two are separate. See 25 C.J.S., Damages, sec. 1(b), at 614 (1966) ("The term 'damages' is to be distinguished from other terms, such as 'debt', 'interest', 'penalty', 'salary', and 'value'.").

We last analyzed this issue in *Aames v. Commissioner,* 94 T.C. 189 (1990), in which we held that "interest" was not excludable under section 104(a)(2). In that case, the taxpayer had sued his attorney for malpractice for failing properly to prosecute the taxpayer's personal injury claim and was awarded damages and interest thereon. We drew a distinction between the damages and the interest on such damages, noting that the nature of interest is that it is paid because of the delay in the receipt of a principal amount. In *Aames,* the principal amount was the amount awarded as "damages". *Id.* at 193.

This issue first arose in *Riddle v. Commissioner,* 27 B.T.A. 1339 (1933), which concerned the excludability of damages and interest awarded thereon in connection with personal injuries sustained during the sinking of the steamship *Lusitania.* The Board, applying predecessors of sections 61(a) and 104(a)(2) (subsections (a) and (b)(5), respectively, of section 22 of the Revenue Act of 1928),[7] held that interest was not a part of damages, observing that the interest was "separately computed and specifically designated as interest * * * and as such is includable in income." *Id.* at 1341.

We have found no cases since *Riddle* was decided in 1933 which suggest that "interest" paid on an award of "damages" received on account of personal injury is excludable under section 104(a)(2). See *Church v. Commissioner,* 80 T.C. 1104, 1111 n.8 (1983), and *Roemer v. Commissioner,* 79 T.C. 398, 403-404 (1982), revd. 716 F.2d 693 (9th Cir. 1983), which

---

mately to be paid were characterized by the employer as deferred compensation plus interest. A deduction for interest on the amount designated as deferred compensation was taken by the employer prior to retirement or termination of the employees, even though the employees had never had a basis upon which they could have filed a claim demanding payment. Under those circumstances, we held that no part of the agreed-upon deferred compensation arrangement constituted interest.

[7] The Revenue Act of 1928, ch. 852, sec. 22(b)(5), 45 Stat. 791, 798, excluded from gross income the following:

Amounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness;

both involved the exclusion of damages under section 104(a)(2), and in which there was agreement by the parties that interest was taxable.[8] Since *Riddle,* the exclusion for personal injury damages has been reenacted and amended numerous times.[9] Nevertheless, the statute continues to exclude only "damages" and omits any mention of "interest". This implies a continuing acceptance by Congress of the existing interpretation of the exclusion. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 381, 382 & n.66 (1982) (longstanding judicial interpretation of statute approved by reenactment); see *Society of Plastics Indus. v. ICC,* 955 F.2d 722, 728-729 (D.C. Cir. 1992) (same).[10] Based on the foregoing, we hold that the statutory "interest" received by petitioners is not excludable as "damages received * * * on account of personal injuries" within the meaning of section 104(a)(2).

The relevant statutory and case law in Michigan is consistent with our holding. The claim underlying petitioners' interest award was brought under M.C.L. section 600.2922, entitled "Death by wrongful act; action for damages; liability." At common law, no cause of action for wrongful death existed in Michigan. *Hardy v. Maxheimer,* 416 N.W.2d 299, 305 (Mich. 1987) (citing *In re Olney Estate,* 14 N.W.2d 574 (Mich. 1944); *Hyatt v. Adams,* 16 Mich. 180 (1867)); accord *Fisher v. Volkswagenwerk A.G.,* 321 N.W.2d 814, 815 (Mich. Ct. App. 1982). Thus, petitioners' right to "damages" for wrongful death stems solely from, and is limited to, what is provided by M.C.L. section 600.2922. See *Endykiewicz v. State Highway Commn.,* 324 N.W.2d 755, 757, 758 & n.2 (Mich. 1982). That statute enumerates several types of damages available for wrongful death in Michigan, including:

---

[8] Cf. *McShane v. Commissioner,* T.C. Memo. 1987-151, which involved a one-time settlement payment for a personal injury. In excluding the full amount of that payment, we relied primarily on the taxpayers' testimony, which indicated that no interest or costs were included in the settlement payment. In addition, we reasoned that no unconditional obligation upon which to compute interest existed until the settlement agreement was reached. We noted, however, that "any statutory interest on the final judgment would have been taxable income under section 61."

[9] See Periodic Payment Settlement Act of 1982, Pub. L. 97-473, sec. 101(a), 96 Stat. 2605; sec. 104(a)(2), I.R.C. 1954, 68A Stat. 30; sec. 22(b)(5), I.R.C. 1939, 53 Stat. 10. The most recent amendment to sec. 104(a)(2) was enacted by the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7641(a), 103 Stat. 2106, 2379.

[10] See also *Cannon v. University of Chicago,* 441 U.S. 677, 696-697 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law;").

reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. * * * [M.C.L. sec. 600.2922(6).]

Petitioners received their interest pursuant to M.C.L. section 600.6013, which is a separate statute devoted solely to the "Interest rate on [the] judgment; [or] settlement." Under M.C.L. section 600.6013(1) and (2), interest is calculated on and added to the judgment and is designed to compensate the plaintiff for the loss of use of the monetary damages.[11] *McGraw v. Parsons,* 369 N.W.2d 251, 254 (Mich. Ct. App. 1985). Statutory interest under M.C.L. section 600.6013 accrues from the date the complaint was filed until the judgment is paid and is not a part of damages. *Vannoy v. City of Warren,* 182 N.W.2d 65, 69 (Mich. Ct. App. 1970), affd. 194 N.W.2d 304 (Mich. 1972); *Banish v. City of Hamtramck,* 157 N.W.2d 445, 451 (Mich. Ct. App. 1968); *Swift v. Dodson,* 149 N.W.2d 476, 478 (Mich. Ct. App. 1967). The distinction between "damages" and "interest" under M.C.L. section 600.6013 is further illustrated by the opinions of the Michigan Supreme Court and Court of Appeals in petitioners' case, in which the Courts' references to "damages" clearly do not include "interest" paid pursuant to the statute. *Kovacs v. Chesapeake & Ohio Ry.,* 397 N.W.2d 169, 169 (Mich. 1986); *Kovacs v. Chesapeake & Ohio Ry.,* 351 N.W.2d 581, 592 (Mich. Ct. App. 1984); see also *Old Orchard by the Bay v. Hamilton Mut. Ins. Co.,* 454 N.W.2d 73, 76 (Mich. 1990); *Denham v. Bedford,* 287 N.W.2d 168, 174 (Mich. 1980); accord *Ramada Dev. Co. v. U.S. Fid. & Guaranty Co.,* 626 F.2d 517, 523-526 (6th Cir. 1980).[12]

---

[11] Under the Michigan statute, interest is awarded as a matter of right upon entry of the judgment at a specified rate regardless of the type of claim or the importance of any element thereof. See M.C.L. sec. 600.6013 (1987) ("Interest *shall* be allowed on a money judgment recovered in a civil action, as provided in this section" (emphasis added)).

[12] Historically, judges and commentators have debated over whether interest constitutes an award "in the nature of damages". See 25 C.J.S., Damages, sec. 51 (1966), and cases cited therein. The historically debated status of interest shows, at a minimum, that it has always been recognized as a concept with its own identity distinct from "damages".

To permit an award of interest it is necessary that the claim for damages shall represent a pecuniary loss which is susceptible of computation with reasonable certainty, or by means of established market values or other generally recognized standards. [25 C.J.S., Damages, sec. 51, at 790 (1966)].

Finally, petitioners argue that the Periodic Payment Settlement Act of 1982, Pub. L. 97-473, section 101, 96 Stat. 2605, supports their position that interest is excludable under section 104(a)(2).[13] The purpose of this act was to codify the position of the Internal Revenue Service as it existed at that time with respect to the excludability of damages received in periodic payments. The Internal Revenue Service's position was that section 104(a)(2) excluded personal injury damages, regardless of whether they were received in periodic payments or as a lump sum. S. Rept. 97-646 (1982), 1983-1 C.B. 514, 515. Petitioners seem to argue that since the amount of future periodic payments would normally be determined by taking into consideration the time value of money, it would be inconsistent to exclude the entire amount of such periodic payments while taxing petitioners on the "interest" that they received.

The legislative history indicates that the limited purpose of the Periodic Payment Settlement Act of 1982 was to "provide statutory certainty" for the exclusion of "damages" that are paid in "periodic payments." S. Rept. 97-646 (1982), 1983-1 C.B. 514, 515. Petitioners did not receive "periodic payments" of damages. Therefore, we perceive no relief that they can derive from the Periodic Payment Settlement Act of 1982, and certainly none from the revenue rulings cited in the legislative history to illustrate the legislative objective.[14] Any

---

The cases in Michigan make clear that statutory interest computed from the date of filing a claim until payment pursuant to M.C.L. sec. 600.6013 is not a part of damages. See *Vannoy v. City of Warren*, 182 N.W.2d 65, 68 (Mich. Ct. App. 1970), affd. 194 N.W.2d 304 (Mich. 1972); *Swift v. Dodson*, 149 N.W.2d 476, 478 (Mich. Ct. App. 1967).

[13] The Periodic Payment Settlement Act of 1982, Pub. L. 97-473, sec. 101, 96 Stat. 2605, amended sec. 104(a)(2) by striking out "whether by suit or agreement" and inserting in lieu thereof "whether by suit or agreement and whether as lump sums or as periodic payments."

[14] The legislative history cites four prior revenue rulings dealing with settlements of personal injury claims. See S. Rept. 97-646 (1982), 1983-1 C.B. 514, 515. In Rev. Rul. 77-230, 1977-2 C.B. 214, periodic payments from a Federal Government trust for a taxpayer's future medical expenses were ruled fully excludable. In Rev. Rul. 79-220, 1979-2 C.B. 74, all periodic payments from an annuity contract purchased by a tortfeasor's insurer were ruled fully excludable. In Rev. Rul. 79-313, 1979-2 C.B. 75, 50 consecutive annual payments, to be increased by 5 percent each year, were ruled fully excludable. Finally, in Rev. Rul. 76-133, 1976-1 C.B. 34, involving a lump sum awarded in a personal injury suit, part of which was then ordered by the court to be invested on behalf of a minor until he reached majority, the interest earned on the investment was ruled *includable* in the minor taxpayer's gross income. What distinguished Rev. Rul. 76-133, *supra*, from the other three rulings was that the taxpayer in Rev. Rul. 76-133 was found to have had constructive receipt or the economic benefit of the damages at the time they were *invested on his behalf. See* S. Rept. 97-646 (1982), 1983-1 C.B. 515 nn. 2 and 3; Rev. Rul. 76-133, *supra*. It is clear from the legislative history that it was Congress' intent to provide "statutory certainty" that the type of "periodic payments" described in the first three rulings would continue to be excluded from gross income.

potential theoretical inconsistency that might arise between taxing statutorily imposed "interest" while excluding "periodic payments" of damages, some part of which may be attributable to the time value of money, is not within our province to remedy. If Congress perceives an inconsistency, and is dissatisfied with the result, it has the power to change the statute. In the meantime, it is our duty to apply the statutory language. Regarding the nonexcludability of interest, application of the relevant statutory language has been consistent since *Riddle v. Commissioner,* 27 B.T.A. 1339 (1933), was decided in 1933. The legislative history of the Periodic Payment Settlement Act of 1982 states explicitly that "This provision is intended to codify, rather than change, present law." S. Rept. 97-646 (1982), 1983-1 C.B. 514, 515. Thus, the amendment effected no change to the longstanding precedent established in *Riddle,* wherein it was held that interest on personal injury damages is not excludable from income.

where * * * Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute. [*Lorrilard v. Pons,* 434 U.S. 575, 581 (1978).]

## *Deductibility of Attorney's Fees*

The parties have agreed that if we hold that petitioners' interest award is includable in income, the attorney's fees attributable to interest are deductible under section 212(1).[15] Because we have held that the interest is includable in income, petitioners will be allowed to deduct the portion of their attorney's fees attributable to interest. *Stocks v. Commissioner,* 98 T.C. 1, 18 (1992); *Metzger v. Commissioner,* 88 T.C. 834, 860 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); *Church v. Commissioner,* 80 T.C. 1104, 1110-1111 (1983).[16]

[15] Attorney's fees attributable to the damages excludable from income are not deductible. Sec. 265(a); *Metzger v. Commissioner,* 88 T.C. 834, 860 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).

[16] In *Church v. Commissioner,* 80 T.C. 1104 (1983), we used the following formula to determine the correct deduction:

$$\text{Total attorney's fees} \times \frac{\text{Nonexempt income}}{\text{Total award}} = \text{Deductible fees}$$

*Decisions will be entered for respondent as to the deficiencies in tax and for petitioners as to the addition to tax.*

Reviewed by the Court.

HAMBLEN, PARKER, SHIELDS, COHEN, CLAPP, SWIFT, GERBER, WRIGHT, PARR, WELLS, CHIECHI, and LARO, *JJ.,* agree with the majority opinion.

JACOBS, *J.,* concurs in the result only.

CHABOT, *J.,* dissents.

---

HALPERN, *J.,* dissenting. I dissent because I believe that the majority has not properly taken account of Congress' 1982 amendment to section 104(a)(2). See section 101 of the Periodic Payment Settlement Act of 1982 (the 1982 amendment), Pub. L. 97-473, 96 Stat. 2605, which struck from section 104(a)(2) the language "whether by suit or agreement" and inserted in lieu thereof the language "whether by suit or agreement and whether as lump sums or as periodic payments". The majority would treat the 1982 amendment as a narrow-purpose amendment, confirming only the application of the section 104(a)(2) exclusion to periodic payments of damages. Majority op. pp. 132-133. I agree with the majority that the 1982 amendment confirms the application of the section 104(a)(2) exclusion to periodic payments of damages. I disagree with the majority, however, as to what Congress had in mind when it confirmed that application of section 104(a)(2).

The legislative history of the 1982 amendment makes it crystal clear that the exclusion for periodic payments of damages on account of personal injuries is not limited to the present value of such periodic payments. Periodic payments—*in their entirety*—are excludable from gross income under section 104(a)(2) as damages received on account of personal injuries. No allocation is allowed for that portion of such payments that represents consideration for the use of money over time, i.e., interest. I would hold that lump-sum payments, including any interest component, likewise are fully excludable under section 104(a)(2) as damages received on account of personal injuries. Certainly, the phrase "whether as lump sums or as periodic payments", which, in

the statute, modifies the phrase "damages received", suggests that Congress intended to disregard any difference between the two methods of payment. Based on the 1982 amendment, I would hold for petitioners on the exclusion issue.[1]

## Interest Portion of Periodic Payments Excluded

The legislative history of the 1982 amendment states that the amendment was intended to codify, rather than change, present law:

> The bill specifically provides that the Code section 104 exclusion from gross income of damages for personal injuries or sickness applies whether the damages are paid as lump sums or as periodic payments. This provision is intended to codify, rather than change, present law. Thus, the periodic payments of personal injury damages are still excludable from income only if the recipient taxpayer is not in constructive receipt of or does not have the current economic benefit of the sum required to produce the periodic payments. See Rev. Rul. 79-220, and Rev. Rul. 77-230. [S. Rept. 97-646 (1982), 1983-1 C.B. 514, 515; accord H. Rept. 97-832 (1982).]

As a preliminary matter, it is clear that the Finance Committee intended no change in the law of constructive receipt or in the economic benefit doctrine. See, e.g., Rev. Rul. 65-29, 1965-1 C.B. 59 (income realized from the investment of a lump-sum award representing the discounted present value of a damage award for personal injuries is not excludable from gross income under section 104(a)(2)). Therefore, two possibilities present themselves as to what the Finance Committee had in mind in confirming the application of the section 104(a)(2) exclusion to periodic payments. The committee may have intended that periodic payments of damages on account of personal injuries are to be received tax-free only until an amount equal to the present value of such periodic payments has been recovered, with the section 104(a)(2) exclusion thereafter being inapplicable, because exhausted. Alternatively, the committee may have intended that such periodic payments, in their entirety, are to be excluded from gross income. The committee's report is persuasive evidence of the latter. See S. Rept. 97-646, *supra,* citing four revenue rulings (described *supra* majority op. note 14) as illustrative of present law. Accord H. Rept. 97-832 (1982). The first three

---

[1] Judge Beghe, in his dissent, informs us that petitioners have conceded the taxability of certain "postjudgment" interest. I would limit my holding for petitioners to "prejudgement" interest, saving the question of "postjudgment" interest for another day.

rulings amply illustrate that the Finance Committee intended the *entirety* of periodic payments received in discharge of an obligation to pay damages on account of personal injury to be received tax free. See, e.g., Rev. Rul. 79-220, 1979-2 C.B. 74 (present value at settlement date of monthly payments to be received less than nominal total of such payments; nominal total excluded from income under section 104(a)(2)). Indeed, the majority does not appear to disagree with that point.

## Lump-Sum Payments

Once it is understood that the 1982 amendment stands for the proposition that, with regard to periodic payments, the time value of money is to be disregarded, then the only remaining question is whether Congress intended any different result with regard to lump-sum payments. I believe that it did not and, consequently, whether payments are made periodically or in a lump sum, time value of money considerations are to be disregarded in determining the taxability of amounts received under section 104(a)(2). As stated earlier, the language of the 1982 amendment supports that conclusion: "whether as lump sums or as periodic payments" suggests that Congress intended to disregard any difference between the two methods of payment.

The revenue rulings cited in the legislative history of the 1982 amendment are of little help in resolving the question, their analysis being mostly conclusory and illustrating well only how to avoid receipt (for tax purposes) of the present value of the expected future payments. Certainly, the rule of exclusion for periodic payments is not limited to the three situations cited as illustrative of present law. Indeed, it appears indisputable that those examples are merely illustrative of some broader rationale on the part of Congress. The breadth of that rationale, however, is unclear. I perceive no persuasive evidence to explain Congress' distinguishing between lump-sum and periodic payments, as the majority suggests.

Congress, one might hypothesize, may have been concerned that a taxpayer accepting a periodic payment arrangement had accepted the credit risk that even the present value of the expected periodic payments would not be received. Rev.

Ruls. 79-220, *supra,* and 79-313, 1979-2 C.B. 75, are consistent with that conclusion. It is difficult, however, to see that concern as prompting the wholesale exclusion of periodic payments, which, as discussed earlier, the 1982 amendment clearly requires. Certainly, if that were Congress' concern, it would have been sufficient to exclude damages received only up until the principal portion of such damages is received. In trying to determine Congress' concern in adopting the 1982 amendment, I find myself in a puzzlement that I can only resolve by deciding that, for whatever reasons, Congress decided that it was best to disregard the fact that time value of money concerns play a role in determining the size of personal injury damage awards or settlement amounts, and to treat *no part* of *any* payment of damages received in connection with personal injuries as being on account of the time value of money. Thus, I would not distinguish between lump-sum payments and periodic payments with regard to time value of money considerations.

I have no quarrel with the majority's distinction between a principal sum and interest. Majority op. p. 129. That distinction, however, appears to be irrelevant when dealing with damages received, whether by suit or agreement and whether as a lump sum or periodic payment, on account of personal injuries. For purposes of section 104(a)(2), interest constituting a portion of such an award or settlement amount and attributable to the payment of damages for personal injury is to be treated no differently from what the majority would agree are damages on account of personal injuries. Treating periodic payments and lump-sum amounts differently with regard to interest does not, as the majority would have it, illustrate only a "potential theoretical inconsistency" wrought by Congress in enacting the 1982 amendment; it illustrates a patent inconsistency in the majority's interpretation of that amendment, whereby Congress decided, for whatever reasons, in connection with section 104(a)(2) payments, to turn a blind eye to interest. We are obliged to respect that decision.

*Judge Beghe's Dissent*

Judge Beghe also dissents from the opinion of the majority. Of course, I agree with Judge Beghe to the extent that he would exclude the entirety of petitioners' recovery based on the 1982 amendment. Beghe op. pp. 151-153. I also agree with his rejection of application of the so-called reenactment doctrine to this case. *Id.* p. 154. I disagree, however, with his conclusion that the sole condition for exclusion of a receipt under section 104(a)(2) is that the amount received (here prejudgment interest) constitutes "damages" within the meaning of that section. Judge Beghe reaches that conclusion based, in part, upon the following reading of *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992): "Once it is found that the personal injury claim is tort or tortlike, all amounts received * * * through the prosecution of the claim are excluded from gross income." Beghe op. p. 146.

Unlike Judge Beghe, I do not read *Burke* as standing for the proposition that *all* amounts received through the prosecution of a claim for a tort (or tortlike) personal injury are excludable under section 104(a)(2). In *Burke,* the Supreme Court merely considered whether the type of injury redressed by title VII of the Civil Rights Act of 1964 (title VII), Pub. L. 88-352, 78 Stat. 253 (current version at 42 U.S.C. sections 2000e to 2000e-17 (1988)), is a "personal injury" within the meaning of section 104(a)(2). The Supreme Court did not have before it, nor did it consider, the meaning of the term "damages" as used therein.[2] The Court's holding was as follows:

> Notwithstanding a common-law tradition of broad tort damages and the existence of other federal antidiscrimination statutes offering similarly broad remedies, Congress declined to recompense Title VII plaintiffs for anything beyond the wages properly due them—wages that, if paid in the ordinary course, would have been fully taxable. *Thus, we cannot say that a statute such as Title VII,* whose sole remedial focus is the award of backwages, *redresses a tort-like personal injury* within the meaning of section 104(a)(2) and the applicable regulations.

---

[2] The Court relied in part on sec. 1.104-1(c), Income Tax Regs., which defines "damages received". Justice Scalia, questioning the relevance of that regulation, noted: "this regulation purports expressly to define only the term 'damages received,' and not the * * * term we are called upon to interpret today ('personal injuries')". *United States v. Burke,* 504 U.S. ___, ___, 112 S. Ct. 1867, 1875 (1992) (Scalia, J., concurring) (citations omitted).

Accordingly, we hold that the backpay awards received by respondents in settlement of their Title VII claims are not excludable from gross income as "damages received ... on account of personal injuries" under section 104(a)(2). * * *

[*Id.* at ____, 112 S. Ct. at 1874; emphasis added; fn. ref. and citations omitted.]

I therefore would hold that *Burke* sheds no light on the question of whether the interest at issue constitutes damages received on account of personal injuries within the meaning of section 104(a)(2).

Nevertheless, I am prepared to agree with Judge Beghe that the interest at issue constitutes "damages" within the meaning of section 104(a)(2). Section 1.104-1(c), Income Tax Regs., is expansive in defining the term "damages" for purposes of section 104(a)(2): "The term 'damages received (whether by suit or agreement)' means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." However, unlike Judge Beghe (and perhaps many of my colleagues), I do not think the sole condition for exclusion contained in section 104(a)(2) is that an amount constitute damages received in a suit involving such tortlike personal injury. Another necessary condition contained in section 104(a)(2) is that the damages be received *"on account of* personal injuries or sickness". See *Horton v. Commissioner,* 100 T.C. 93, 108 (1993) (Whalen, J., dissenting) (emphasis added). Absent the 1982 amendment, I would not be persuaded that that condition has been met. Indeed, the purposes of the Michigan statutory interest provision in question, Mich. Comp. Laws sec. 600.6013 (1987), have been stated by the Michigan Supreme Court to be compensating for delay in payment of money damages, covering the costs of litigation, and encouraging prompt settlement. *Old Orchard by the Bay v. Hamilton Mut. Ins. Co.,* 454 N.W.2d 73, 76-77 (Mich. 1990). From that description alone, I would not conclude that the interest in question was received "on account of personal injuries or sickness." For that reason, without benefit of the 1982 amendment, I would not conclude that the requirements of section 104(a)(2) have been satisfied.

WHALEN, *J.*, agrees with this dissenting opinion.

---

BEGHE, *J.*, dissenting: I respectfully dissent. Statutory prejudgment interest on damages received on account of personal injuries is properly excluded from gross income under section 104(a)(2). I am impelled to this conclusion by the preexisting character of prejudgment interest on tort and other unliquidated claims *as* damages, for Federal income tax purposes and at common law and under such superseding statutes as Mich. Comp. Laws (M.C.L.) section 600.6013 (1987). This conclusion is supported by recent Federal income tax developments, including the Supreme Court's opinion in *United States v. Burke,* 504 U.S. ____, 112 S. Ct. 1867 (1992), our own reviewed decisions excluding from gross income under section 104(a)(2) punitive damages in personal injury actions[1] and settlements of claims to backpay in age discrimination suits,[2] our treatment of amounts denominated "interest" under deferred compensation arrangements as deferred compensation subject to the deduction timing restrictions of section 404,[3] and the disregard of the interest element in both lump-sum settlements of claims for damages on account of personal injuries[4] and in deferred payment settlements governed by the amendment to section 104(a)(2) by the Periodic Payment Settlement Act of 1982, Pub. L. 97-473, 96 Stat. 2605 (1982). As a result of these developments, "related principles of law have so far developed as to have left the old rule[5] no more than a remnant of abandoned doctrine",[6] so that neither stare decisis nor shopworn maxims about reenactment and narrow construction of exclusions from gross income require us to persist in following the old rule.[7] We should confine to their generative facts the decisions that have treated as ordinary income, rather than as

---

[1] *Horton v. Commissioner,* 100 T.C. 93 (1993); *Miller v. Commissioner,* 93 T.C. 330 (1989), revd. and remanded 914 F.2d 586 (4th Cir. 1990).

[2] *Downey v. Commissioner,* 97 T.C. 150 (1991); *Keller v. Commissioner,* T.C. Memo. 1991-373.

[3] *Albertson's, Inc. v. Commissioner,* 95 T.C. 415 (1990), on appeal (9th Cir., June 6, 1991).

[4] *McShane v. Commissioner,* T.C. Memo. 1987-151.

[5] Of *Aames v. Commissioner,* 94 T.C. 189 (1990); see also *Riddle v. Commissioner,* 27 B.T.A. 1339 (1933).

[6] *Planned Parenthood v. Casey,* 504 U.S. ____, ____, 112 S. Ct. 2791, 2808-2809 (1992).

[7] Opposed to the thrust of each such maxim or canon of construction is a parry or counterthrust. See Llewellyn, Common Law Tradition: Deciding Appeals, 521-535 (1960); *infra* pp. 153-156.

part of the amount realized, amounts received for delay in receipt of condemnation awards.[8] Finally, the majority do not address some questions about proper allocation of the attorney's fees; the answers not only support the inapplicability of the condemnation cases to the primary issue in this case, but also indicate that a pro rata apportionment of such fees between the excludable and taxable parts of the award[9] is not the only way to go on this subsidiary issue.

## I. *Exclusion of Prejudgment Interest as Damages*

### A. *Distinction Between Prejudgment and Postjudgment Interest*

The way to get into this case is to observe that, on February 3, 1987, the Michigan Supreme Court, the State court of last resort, denied the C&O's motion for a rehearing. Prior thereto, petitioners had no legal right to recover on their claims, but on that date the judgment against the C&O in favor of petitioners became final, and petitioners' entire claim for damages, including statutory interest, was liquidated and became an indebtedness of the C&O to petitioners.

Petitioners argue that the "prejudgment interest" accruing to February 3, 1987, is part of the damages excludable from gross income under section 104(a)(2). However, petitioners concede that statutory interest accruing after that date, until March 17, 1987, when the C&O satisfied the judgment by issuing its check for $2,254,741.70, is "interest" includable in gross income under section 61(a)(4).[10] The concededly taxable interest accruing from February 3, 1987, until the date of payment I call "postjudgment interest".[11]

I agree with petitioners that the statutory interest accruing to February 3, 1987, or "prejudgment interest", should be

---

[8] *Kieselbach v. Commissioner,* 317 U.S. 399 (1943); *Tiefenbrunn v. Commissioner,* 74 T.C. 1566 (1980); *Smith v. Commissioner,* 59 T.C. 107 (1972); *Wheeler v. Commissioner,* 58 T.C. 459 (1972); see also *Ferreira v. Commissioner,* 57 T.C. 866, 872 n.7 (1972).

[9] See, e.g., *Church v. Commissioner,* 80 T.C. 1104, 1110-1111 (1983).

[10] The thrust of Judge Halpern's dissent is that petitioners' concession should be disregarded and that, for cash basis taxpayers such as petitioners, the entire award received by them is entitled to exclusion under sec. 104(a)(2), and only the subsequent earnings on the amounts received and invested by them are properly taxable. Inasmuch as it was the income from investment of the proceeds of a personal injury or malpractice award that was at issue in *Trez v. Commissioner,* T.C. Memo. 1976-141, the citation of that case by the majority is inapposite (majority op. p. 127).

[11] Petitioners have not provided a computation of the taxable amount, but, at the 12-percent compounded rate under Mich. Comp. Laws (M.C.L.) sec. 600.6013 (1987), it would appear to be approximately $30,000. This amount could be fixed on a Rule 155 computation.

treated as part of the damages received on account of Mr. Kovacs' wrongful death.[12] Although a time value of money element inheres in both prejudgment and postjudgment interest, there is a long history of legal precedent that treats prejudgment interest on an unliquidated claim as part of the damages received on account of the injury that gave rise to the claim and the resulting right to receive such damages, see McCormick, Handbook on the Law of Damages, sec. 50, at 205 (1935), whereas postjudgment interest is considered interest eo nomine (by that name), Dobbs, Law of Remedies, sec. 3.5, at 164 (1973), because it accrues on an indebtedness that has been fixed by final court order.

Interest has been generally defined as the compensation allowed by law or fixed by the parties for the use or forbearance of money. See Black's Law Dictionary 812 (6th ed. 1990). While this definition applies to most types of interest, it fails to capture the nature of interest on damages arising from noncontractual claims. As Professor McCormick stated in his often-cited treatise on the law of damages: "This definition * * * is defective in ignoring interest allowed as compensation for delay in satisfying unliquidated claims." McCormick, *supra* at 205 n.1.[13] The defect is that interest (as compensation for the time value of money) is not simply a creature of contract, but also may be an amount "allowed by

---

[12] The trial court had awarded statutory interest under M.C.L. sec. 600.6013, calculated from the commencement of the suit, Sept. 25, 1978, through the date of its original judgment, June 18, 1982, in the amount of $360,777.41. The swelling of the interest amount included in the award finally paid on Mar. 17, 1987, $1,253,607.17, is attributable not only to the passage of time, but also to the increase in the statutory rate under M.C.L. sec. 600.6013. Effective as of June 1, 1980, the statutory rate was increased from 6 percent per year to 12 percent per year compounded annually. This raises the question whether the division date between prejudgment and postjudgment should be the date of the original judgment of the trial court or the later date on which the decision of the court of last resort became final. The question can have substantive law significance, e.g., for insurance law purposes. Compare *Matich v. Modern Research Corp.,* 420 N.W.2d 67, 75 n.15 (Mich. 1988) with *Incollingo v. Ewing,* 379 A.2d 79 (Pa. 1977). In any event, I think this question should be decided by reference to a Federal standard, see the discussion in *Fisher v. Commissioner,* T.C. Memo. 1992-740, and that the date the judgment becomes final should be the choice for Federal income tax purposes. I would choose the later date, when the judgment becomes final, as the division date, by analogy to the rule that an accrual basis taxpayer is not entitled to accrue a deductible claim until he ceases to contest it or the judgment becomes final. Compare *United States v. Consolidated Edison Co.,* 366 U.S. 380 (1961) with sec. 461(f).

[13] Although Professor McCormick's treatise on the law of damages has remained unchanged since its publication in 1935, it continues to be cited as one of the leading authorities on the subject, particularly with reference to its exposition of the history of interest as an element of damages. See, e.g., *Monessen Southwestern Ry. v. Morgan,* 486 U.S. 330, 337 (1988); *Library of Congress v. Shaw,* 478 U.S. 310, 314 (1986); see also Williams, "Prejudgment Interest: An Element of Damages Not To Be Overlooked", 8 Cumb. L. Rev. 521 (1977).

law as additional damages for loss of use of the money due as damages, during the lapse of time since the accrual of the claim." *Id.* at 205.

Professor McCormick showed that there is an historical distinction between "'conventional' or promised interest, on the one hand, and interest *as* damages, on the other." *Id.* at 206 (emphasis added; citation omitted); see also Dobbs, Law of Remedies, sec. 3.5, at 164 (1973); Black's Law Dictionary 812 (6th ed. 1990).[14] "[A] sharp distinction must be taken between interest which is agreed to be paid as one of the terms of a contract and interest not based on promise, but given by law for the withholding of money or compensation due." McCormick, *supra* at 205.[15]

## B. *Nondeductibility of Prejudgment Interest on Unliquidated Claims*

To determine properly the income tax character of the amount awarded under M.C.L. section 600.6013, the Court should deconstruct the term "interest", rather than simply accept the contention that "interest is interest". The common law distinction between conventional interest and interest *as* damages is brought out by Federal income tax cases dealing with the deduction under section 163(a) for "interest paid or accrued * * * on indebtedness". These cases make clear that prejudgment interest included in an award on a

---

[14]See sec. 1.61-7(a), Income Tax Regs., for examples of conventional interest on various types of contractual and liquidated claims. The list also includes one type of interest on what might be considered unliquidated claims, "the interest portion of a condemnation award". Sec. 1.61-7(a), Income Tax Regs.; see also *Kieselbach v. Commissioner,* 317 U.S. 399 (1943) (interest on condemnation awards), discussed *infra* pp. 156-157 and 160.

[15]The majority rule at common law was that prejudgment interest was not allowed on personal injury claims, at least with respect to pain and suffering and other nonfinancial harms. 4 Restatement, Torts 2d, sec. 913(2) (1979); McCormick, Handbook on the Law of Damages, sec. 50, at 205 (1935). Some jurisdictions allowed interest on lost wages between the time of the injury and the time of the verdict, just as they required lost future wages to be discounted to present value as of the time of the verdict. 4 Restatement, *supra* secs. 913(2) comment, 913A; McCormick, *supra* sec. 56.

Be that as it may, the Michigan statutory system for interest now applies to all types of claims without any distinction between contractual and noncontractual claims, and between pecuniary harms and other types of injury. M.C.L. sec. 600.6013 provides a legislative exception to the common law prohibition against interest as an element of damages and codifies the American trend favoring the award of prejudgment interest. *Ramada Development Co. v. U.S. Fidelity & Guaranty Co.,* 626 F.2d 517, 525 (6th Cir. 1980). However the jury is still instructed that it can include in the damages interest on financial claims accruing during the time from the date of the injury to the initiation of the lawsuit. *Ryan v. Ford Motor Co.,* 334 F. Supp. 674, 675-676 (E.D. Mich. 1971); *Vannoy v. City of Warren,* 182 N.W.2d 65 (Mich. Ct. App. 1970), affd. 194 N.W.2d 304 (Mich. 1972).

noncontractual claim is not deductible by the payor as interest on indebtedness under section 163(a) and its statutory predecessors. This is because there is no debtor-creditor relationship between the parties until the judgment is entered. *Midkiff v. Commissioner,* 96 T.C. 724 (1991); *Bettendorf v. Commissioner,* 3 B.T.A. 378 (1926); see also *Jordan v. Commissioner,* 60 T.C. 872, 881 (1973), affd. per curiam 514 F.2d 1209 (8th Cir. 1975); cf. *Vertex Investment Co. v. Commissioner,* 47 B.T.A. 252 (1942), vacated and remanded per curiam on other grounds 32 AFTR 1750, 43-2 USTC par. 9602 (9th Cir. 1943). However, the entry of final judgment on behalf of the plaintiff creates a debt, and section 163(a) allows the defendant a deduction for interest paid or accrued on the judgment. *Bettendorf v. Commissioner, supra.*[16]

## C. *Recent Developments*

In *Albertson's, Inc. v. Commissioner,* 95 T.C. 415 (1990), on appeal (9th Cir., June 6, 1991), we held that amounts equal to interest accrued on unpaid deferred compensation were not deductible as interest under section 163(a) by the accrual basis employer. Rather, these amounts represented additional deferred compensation for personal services that were deductible under section 404 only when paid or otherwise included in the income of the employees.[17] The time value of money element in these amounts that arguably prevented them from having the character under section 162(a)(1) of "compensation for personal services actually rendered" did not prevent us from characterizing them consistently with the underlying statutory purpose of section 404. The teaching of *Albertson's* is that an amount that has a time value of money aspect can also take on another supervening character from the transaction or circumstances that gave rise to it.

Unlike conventional interest on indebtedness, prejudgment interest as damages takes its character from the originating claim; in this case a claim for physical personal injuries. In

---

[16] Subject, of course, to the current restrictions on the deductibility of personal interest under sec. 163(h) and the economic performance requirements under sec. 461(h).

[17] This is consistent with respondent's view that dividends on restricted stock that is not substantially vested under sec. 83, as to which the employee-stockholder has not made a sec. 83(b) election, are treated as compensation and not as dividend income. See Rev. Proc. 80-11, 1980-1 C.B. 616; cf. Rev. Proc. 83-22, 1983-1 C.B. 680; Rev. Proc. 83-38, 1983-1 C.B. 773.

*Miller v. Commissioner,* 93 T.C. 330 (1989), revd. and remanded 914 F.2d 586 (4th Cir. 1990), we concluded that punitive damages on a personal injury claim took their character from the originating claim and were excluded from gross income under section 104(a)(2). We so held, despite the general rule of taxability of punitive damages as accessions to wealth enunciated in *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426 (1955), and the fact that something extra, the defendant's egregious conduct, was required in order to entitle the plaintiff to punitive damages. We recently reaffirmed that view in *Horton v. Commissioner,* 100 T.C. 93 (1993).

In *Downey v. Commissioner,* 97 T.C. 150 (1991), we held that a settlement of a claim for backpay on account of age discrimination and the liquidated damages added thereto were both excludable from gross income under section 104(a)(2). We so treated them even though the backpay portion restored amounts that would have been taxable compensation, and the liquidated damages in part compensated the plaintiff for delay in receiving the backpay under the Age Discrimination in Employment Act of 1967 (ADEA), Pub. L. 90-202, 81 Stat. 602-608. Similarly, statutory interest on a personal injury or wrongful death award compensates for the delay in payment. But like liquidated damages under the ADEA, and the punitive damages in *Miller v. Commissioner, supra,* statutory interest under M.C.L. section 600.6013 also helps to compensate the plaintiff for costs and attorney's fees, see *Downey v. Commissioner, supra* at 172; *Old Orchard by the Bay v. Hamilton Mut. Ins. Co.,* 454 N.W.2d 73, 75-76 (Mich. 1990); *Denham v. Bedford,* 287 N.W.2d 168, 174 (Mich. 1980), as well as make the plaintiff whole. See *Currie v. Fiting,* 134 N.W.2d 611, 616 (Mich. 1965).

In *United States v. Burke,* 504 U.S. ____, 112 S. Ct. 1867 (1992), the Supreme Court stated that an amount will be treated as personal injury damages under section 104(a)(2) if it is received through prosecution of legal action based on a tort or tort type right or settlement in lieu thereof. *Id.* at ____, 112 S. Ct. at 1870 (citing sec. 1.104-1(c), Income Tax Regs.). The Supreme Court applied this rule to backpay awards received under title VII of the Civil Rights Act of 1964, Pub. L. 88-352, 78 Stat. 241, 253 (current version at 42 U.S.C sections 2000e to 2000e-17 (1988)), and held that

such awards were not excluded from gross income under section 104(a)(2) because the Civil Rights Act did not provide a full panoply of tort remedies. Hence, the Court held that the rights protected by the statute were not tort or tortlike. *United States v. Burke,* 504 U.S. at ___, 112 S. Ct. at 1873-1874. In so holding, the Supreme Court agreed with the approach we adopted in *Threlkeld v. Commissioner,* 87 T.C. 1294, 1305 (1986), affd. 848 F.2d 81 (6th Cir. 1988), which looks to the tort or tortlike nature of the claim to determine whether damages were received on account of personal injuries. See also *Downey v. Commissioner, supra* at 160; *Glynn v. Commissioner,* 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). We should apply this approach to the case at hand.

The majority conclude, majority op. p. 129, that none of the interest portion of the award can be treated as damages because it serves a purpose fundamentally different from the underlying damages—compensating petitioners for the C&O's delay in payment. However, this overemphasizes the time value of money aspect of the recovery. The regulation under section 104(a)(2), section 1.104-1(c), Income Tax Regs., which was applied by the Supreme Court in *United States v. Burke, supra,* provides that

The term "damages received (whether by suit or agreement)" means an *amount received* (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution. [Emphasis added.]

This regulation covers all amounts received and does not distinguish among the component parts of an award received by a plaintiff in a tort action, such as lost future earnings, medical and funeral expenses, pain and suffering, loss of companionship, etc., or interest. Instead, the regulation focuses on the nature of the underlying claim. Once it is found that the personal injury claim is tort or tortlike, all amounts received from the defendant and its insurer through the prosecution of the claim are excluded from gross income. See *United States v. Burke, supra; Downey v. Commissioner, supra; Threlkeld v. Commissioner, supra.* Moreover, the regulation and court decisions interpreting section 104(a)(2) do not look to how the amount received would be treated for tax

purposes outside the personal injury context. See *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir. 1983), revg. 79 T.C. 398 (1982); *Downey v. Commissioner, supra* at 163-164; *Threlkeld v. Commissioner, supra* at 1300; see also Gideon, Lawsuits and Settlements, par. 103.04, at 314-315 (1992). Thus, this Court should be not bound by the "tyranny of labels"[18] to assume that an amount labeled "interest" must be treated as interest income for tax purposes when it is received through the prosecution (or settlement) of a tort or tortlike claim for personal injuries.

As the majority recognize, majority op. p. 127, petitioners' wrongful death claim against the C&O was for personal injuries and sounded in tort. Consequently, under the Code and regulations, any amount petitioners received on account of that claim was "damages" for such personal injuries within the meaning of section 104(a)(2) and excludable from gross income regardless of how computed or its purpose of compensating for delay in payment.

## D. *Michigan Law*

The majority state, majority op. pp. 130-131, that, under Michigan law, statutory interest is not an element of damages and therefore must be treated differently from interest awarded as an element of damages. As support for this argument, the majority cite *McGraw v. Parsons*, 369 N.W.2d 251, 254 (Mich. Ct. App. 1985), in which the Michigan Court of Appeals observed that interest as an element of damages and statutory interest on a judgment are different because the former is awarded as part of the verdict and the latter is computed on and added to the underlying damages. The majority also argue that statutory interest must be included in gross income as ordinary interest because its purpose, like conventional interest on indebtedness, is to compensate the plaintiff for the lost use of funds and not for personal injuries or sickness.

The majority's reliance on *McGraw v. Parsons, supra,* is misplaced. In that case, a borrower and a lender had executed an interest-bearing note. The borrower stopped making payments on the note and the lender brought suit. The parties entered into a consent judgment. The trial court

---

[18] *Snyder v. Massachusetts*, 291 U.S. 97, 114 (1934) (opinion of Cardozo, J.).

approved the consent judgment and awarded the lender interest under M.C.L. section 600.6013. The borrower argued that no additional interest should be awarded because the consent judgment already provided for interest as specified in the note. On appeal, the Michigan Court of Appeals held that statutory interest under M.C.L. section 600.6013 was mandatory and must be added to the consent judgment.

Although the Michigan Court of Appeals, in *McGraw v. Parsons, supra,* stated that the statutory interest served a purpose different from the interest provided in the consent judgment, that case concerned a liquidated claim for principal and interest, and arose out of a failure to make payments on an interest-bearing note. The court therefore concluded, inasmuch as interest was already a part of the parties' contract, and not a form of additional damages, that the plaintiff would not be collecting double interest. By contrast, Michigan courts do not permit plaintiffs in wrongful death cases, where the damages are unliquidated, to concurrently receive both interest as an element of common law damages and interest under M.C.L. section 600.6013. *Vannoy v. City of Warren,* 182 N.W.2d 65 (Mich. Ct. App. 1970).

According to the majority, "petitioners' right to 'damages' for wrongful death stems solely from, and is limited to, what is provided by M.C.L. section 600.2922", the Michigan Wrongful Death Act, majority op. p. 130. For this proposition the majority rely on *Endykiewicz v. State Highway Comm.,* 324 N.W.2d 755, 757, 758 & n.2 (Mich. 1982). Subsection 6, the damages provision of the Michigan Wrongful Death Act, provides that the damage award must *include*

reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death; and damages for the loss of financial support and the loss of the society and companionship of the deceased. * * * [M.C.L. sec. 600.2922(6).]

The statute also provides that "the court or jury may award damages as the court or jury shall consider fair and equitable". M.C.L. sec. 600.2922(6).

There is nothing in subsection 6 of the Michigan Wrongful Death Act that prohibits a Michigan court or jury from including an interest (time value of money) element in its

verdict, so long as it is "fair and equitable". The language quoted above simply provides what must be included in the damages for wrongful death; it does not limit the damage award to those amounts or prohibit what may be included in addition to them. Moreover, the Michigan Supreme Court did not say anything in *Endykiewicz v. State Highway Commission, supra,*[19] that bears on the question before us other than the truism that the Wrongful Death Act provides "the sole vehicle for the recovery of damages occasioned by death." *Id.* at 758.[20]

In *Currie v. Fiting,* 134 N.W.2d 611, 616 (Mich. 1965), the Michigan Supreme Court held that interest may be included as an element of damages in a wrongful death action. Similarly, in *Vannoy v. City of Warren, supra,* the Michigan Court of Appeals recognized that interest awarded pursuant to M.C.L. section 600.6013 in a wrongful death case, although computed on and added to the underlying damages, serves the same purpose and is essentially equivalent to the common law interest made a part of the verdict in *Currie v. Fiting, supra.* Therefore, I do not agree with the majority that Michigan law precludes a finding that damages received on account of wrongful death may include an interest, or time value of money, element.

The majority correctly observe that statutory interest is awarded under a separate statute from the basic wrongful death damages. Majority op. p. 131. However, that does not dispose of the question before us. The statute providing for interest on damages, M.C.L. section 600.6013, applies to all types of damage awards, not just tort or wrongful death awards. All this means is that the Michigan legislature, for the sake of efficiency and convenience, enacted one interest provision rather than a series of different provisions for the many different types of civil actions. The fact that there is one interest provision and that it is separate does not mean that prejudgment interest cannot be a form of damages and that the interest element in a personal injury claim is not

---

[19] *Endykiewicz v. State Highway Commission,* 324 N.W.2d 755 (Mich. 1982), holds that the administratrix of a decedent's estate could sue under the Wrongful Death Act for damages for loss of companionship and society in an action that alleged that the State of Michigan breached its duty to maintain a highway in a reasonably safe condition even though the State had, in another statute, limited its liability for highway defects to bodily injury and property damage.

[20] As the majority observe, wrongful death is a purely statutory tort unknown at common law, majority op. p. 130. Prosser & Keeton, Law of Torts, sec. 127, at 945-947 (5th ed. 1984).

damages on account of personal injuries for Federal income tax purposes.

The majority point out that statutory interest is calculated on and added to the judgment. Majority op. p. 131. In Michigan, when a plaintiff obtains a money judgment in any civil action, the plaintiff is automatically entitled to receive interest on the judgment under M.C.L. section 600.6013. No additional evidentiary showing is required. *Old Orchard by the Bay v. Hamilton Mut. Ins. Co.,* 454 N.W.2d 73, 75 (1990). However, this does not impede the Court from holding that, for tax purposes, statutory prejudgment interest on a tort claim is part of the underlying damages, rather than conventional interest eo nomine. By following respondent's approach, the Court has ignored the fact that petitioners' right to receive interest on damages under M.C.L. section 600.6013 originated with and was inextricably tied to their right to be compensated for personal injuries. The fact that interest is computed on and added to the underlying damages is simply the way this additional amount is computed. Its tax character, however, is not properly determined solely by this characteristic.

### E. *Congressional Intent*

The approach the Court should take in the case is consistent with the legislative purposes of section 104(a)(2),[21] insofar as they are currently understood. Although the original legislative history is scant, it suggests that Congress viewed compensation received for personal injuries or sickness as beyond the reach of the income tax. H. Rept. 767, 65th Cong., 2d Sess. 9-10 (1918), 1939-1 C.B. (Part 2) 86, 92; see *Downey v. Commissioner,* 97 T.C. 150, 157-158 (1991). One of the theories supporting the exclusion is that personal injury awards represent a return of "human capital" and thus simply make the victim whole by restoring him to the position he was in prior to the tortious injury. Hence, the recipient has no taxable gain inasmuch as he is no better off than he was prior to the injury. See *Hawkins v. Commissioner,* 6 B.T.A. 1023, 1025 (1927); see also Chirelstein, Fed-

---

[21] The exclusion for damages received on account of personal injuries or sickness first appeared in the Revenue Act of 1918, ch. 18, sec. 213(b)(6), 40 Stat. 1057, 1066.

eral Income Taxation, sec. 2, at 40-41 (6th ed. 1991) (Recovery of Capital Investment).[22]

Another view is that the exclusion of personal damages is grounded in compassion for the victim. That is, "taxation of recoveries carved from pain and suffering is offensive, and the victim is more to be pitied rather than taxed." Harnett, "Torts and Taxes", 27 N.Y.U. L. Rev. 614, 627 (1952); see *Norfolk & Western Ry. v. Liepelt,* 444 U.S. 490, 501 (1980) (Blackmun, J., dissenting). However, the compassion justification has no sound theoretical foundation in tax policy. See Gideon, Lawsuits and Settlements, par. 103.04, at 314 (1990). Compassion for the victim of personal injury is not a tax reason for excluding damages from gross income. Instead, the exclusion stems from supervening nontax notions that tort victims should be compensated for pain and suffering and other damages and costs arising from personal injuries or sickness, including lost wages and punitive damages, without paying tax on the recovery.[23]

1. *Lump-sum and periodic payment settlements.* To exclude the interest portion of the award from gross income would be consistent with Congress' 1982 amendment to section 104(a)(2), which effectively codified three of respondent's revenue rulings[24] that a victim of personal injuries who receives damages in periodic payments, rather than as a lump sum, may exclude from gross income the entire amount of each payment, including the portion attributable to interest. Periodic Payment Settlement Act of 1982, Pub. L. 97-473, 96 Stat. 2605; H. Conf. Rept. 97-984 (1982), 1983-1 C.B. 522; S. Rept. 97-646 (1982), 1983-1 C.B. 514; see also H.

---

[22] The human capital justification for sec. 104(a)(2) has been criticized as being inconsistent with other principles of taxation. Blackburn, "Taxation of Personal Injury Damages: Recommendations for Reform", 56 Tenn. L. Rev. 661 (1989); Dodge, "Taxes and Torts", 77 Cornell L. Rev. 143, 152-153 (1992). For example, if a person receives no damage award after being injured by another, that person is not entitled to a casualty loss deduction under sec. 165(c)(3). See Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 34 (1990). In *Downey v. Commissioner,* 97 T.C. 150, 159 (1991), we stated that it is doubtful "whether the return of capital theory justifies the exclusion from income of the full range of damages found to be excludable under section 104(a)(2), particularly damages received in lieu of lost income."

[23] The compassion justification has also been criticized on the ground that there is nothing in the legislative history of sec. 104(a)(2) that indicates that Congress intended to bestow a humanitarian benefit on taxpayers who received damages for personal injuries or sickness. See Dodge, *supra* at 148-149. However, in *Downey v. Commissioner, supra* at 158-159, we observed that the emotional justification for the exclusion was more satisfactory than the human capital approach.

[24] Rev. Rul. 79-313, 1979-2 C.B. 75; Rev. Rul. 79-220, 1979-2 C.B. 74; Rev. Rul. 77-230, 1977-2 C.B. 214.

Rept. 97-832 (1982). If Congress had intended to bifurcate personal injury damage awards into taxable and nontaxable components, it would not have specifically excluded from gross income the interest element of the periodic payments under structured settlements.

In addition, victims of personal injury who settle their claims may exclude from gross income amounts that the parties take account of as interest yet characterize as damages in their settlement agreement. See *McShane v. Commissioner*, T.C. Memo. 1987-151.[25] There is no reason why the tax law should respect the exclusion of interest when it is received in a personal injury claim settlement that purports to disregard it, as in *McShane*, but not when it is received pursuant to a final judgment, as in this case.[26] In *Downey v. Commissioner*, 97 T.C. 150 (1991), we held that amounts received in settlement of an age discrimination suit were excludable under section 104(a)(2) and made no distinction between damages received by reason of a court or jury verdict and those received by reason of a settlement. This was in accord with the regulation interpreting section 104(a)(2), which specifically provides that no such distinction should be made. Sec. 1.104-1(a), Income Tax Regs.

---

[25] In *McShane v. Commissioner*, T.C. Memo. 1987-151, the taxpayers settled their personal injury case while it was on appeal from a jury verdict in their favor, for an amount in excess of the basic damages awarded by the jury that obviously included prejudgment interest. We noted that the interest portion of the settlement would have been awarded as statutory interest under the applicable Massachusetts law had the case not been settled and the verdicts rendered in their favor proceeded to final judgment. We stated that it was "undisputed that if that had been the case, any statutory interest on the final judgment would have been taxable under section 61." However, this statement in *McShane* is dictum, because the issue of the taxability of interest on a judgment was not before us, and inapplicable here, because it appears to have been merely a statement of what the parties in that case did not dispute rather than a description of the applicable law.

[26] It might be argued that there is a public policy reason for favoring settlements by providing personal injury plaintiffs who settle with more favorable tax consequences than if they pursue their claims to final judgment. Insofar as this tax case is concerned, however, it could be improper for us to be distracted by what is essentially a local law consideration that already appears to have been adequately taken care of by the Michigan statute. The Michigan statute providing for judgment interest already has built-in provisions that are designed in a more discriminating way to favor settlement and to discourage parties who reject reasonable settlements and hold out for final judgment on the merits. M.C.L. sec. 600.6013(5) provides that if the plaintiff should reject a bona fide reasonable offer of settlement made by defendant, which is substantially identical to or substantially more favorable to the prevailing party than the ultimate judgment, then the court is not to allow interest beyond the time the written offer of settlement was made and rejected by the plaintiff, and filed with the court. Similarly, if such an offer is made by the plaintiff and rejected by the defendant, the court shall order that interest be calculated from the date of the rejection of the offer to the date of satisfaction of the judgment at a rate of interest 2 percentage points higher than what the rate would have otherwise been.

Just as there is no reason to distinguish between damages and interest received by settlement and damages and prejudgment interest received by verdict, there is no reason to distinguish between interest when it is received in a lump sum or in periodic payments. The jurisprudence of this Court and Congress' 1982 amendment to section 104(a)(2) tell us that the interest component can be packed into an award for personal injuries and excluded from gross income, even though it is compensation for delay in payment.[27]

2. *Insurance proceeds analogy.* The notions that underlie the statutory exclusion of personal injury damages, section 104(a)(2), also appear to underlie the total exclusion in section 101(a) of life insurance proceeds received on the death of the insured, including the portion of the proceeds attributable to interest on the investment in the contract (the "inside build-up"). Both statutory provisions permit recipients to exclude from gross income the interest that would otherwise be included in gross income, but which are received as result of personal calamity. See Chirelstein, Federal Income Taxation 39-41 (6th ed. 1991).[28]

3. *Canons of construction.* The majority argue that reading section 104(a)(2) to exclude interest on damages is contrary to the maxim that exclusions from gross income are to be narrowly construed. See *Commissioner v. Jacobson,* 336 U.S. 28, 49 (1949). However, I read the statute consistently with its broad and sweeping exception that "any damages" received on account of personal injuries are not included in gross income. See *Miller v. Commissioner,* 93 T.C. 330, 338, 340-341 (1989) (citing *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 543 (1940)), revd. and remanded 914 F.2d 586 (4th Cir. 1990).[29] By enacting section

---

[27] For a similar analysis that arrives at a contrary conclusion, see Abreu, "Distinguishing Interest from Damages: A Proposal For a New Perspective", 40 Buff. L. Rev. 373, 390 n.72 (1992).

[28] A current example of the administrative application and extension of the compassion approach is the pending proposal to allow terminally ill beneficiaries (such as AIDS victims) of life insurance policies to draw down the proceeds free of income tax. Secs. 1.101-8, 1.7702-2, Proposed Income Tax Regs., 57 Fed. Reg. 59319 (Dec. 15, 1992), concerning qualified accelerated death benefits; see Pear, "Benefit Proposed for Terminally Ill—IRS would Allow Tax-Free Payment of Life Insurance While Person Is Alive", N.Y. Times, Dec. 16, 1992, at A-29. What this proposal appears to do is turn the interest earnings on the policy (the "inside build-up") into compensation for terminal illness under sec. 104(a)(2).

[29] Although our decision in *Miller v. Commissioner,* 93 T.C. 330 (1989), was reversed and remanded 914 F.2d 586 (4th Cir. 1990), the fact that sec. 104(a)(2) is broadly worded has not changed, even since the statute's 1989 amendment after our decision in *Miller.* Omnibus Budget

104(a)(2), Congress provided that amounts ordinarily includable in gross income, such as amounts equal to interest and lost wages, may be excludable when received as compensation for personal injuries suffered as a result of a tort or tortlike activity. See, e.g., *Downey v. Commissioner,* 97 T.C. 150, 163-164 (1991) (settlement of claim for backpay, including interest, received in an age discrimination suit under the ADEA excludable under sec. 104(a)(2)); see also Gideon, Lawsuits and Settlements, par. 103.04, at 313-314 (1990).

Nor should the doctrine of "reenactment" referred to by the majority, majority op. p. 130, impede us from properly deciding this case. There is no valid reason to believe that Congress reenacted the Board of Tax Appeals' decision in *Riddle v. Commissioner,* 27 B.T.A. 1339 (1933), when it amended section 104(a)(2) in 1982 and 1989, much less when it enacted the Internal Revenue Codes of 1939, 1954, and 1986. *Riddle* does not stand for the proposition that prejudgment interest is not excludable from gross income under section 104(a)(2), but only that postjudgment interest must be included in gross income.

*Riddle* concerned the taxability of postjudgment interest on a $15,000 award by the Mixed Claims Commission for personal injuries suffered by the taxpayer in the sinking of the *Lusitania* in 1915. The interest had accrued from November 1, 1923, the date of the award. The award was not paid until 1928, the taxable year before the Board. Under the rules of the Mixed Claims Commission, interest was not allowable from the time of loss, but only from the time the loss was fixed by the Commission. In these circumstances, the Board held that the interest was not excludable as part of the personal injury damages awarded by the Board, but was rather separately stated postjudgment interest and taxable as such.

Even if the majority properly read *Riddle* as supporting the proposition that all interest on damages for personal injuries, whether accruing before or after final judgment, is not excludable from gross income as damages, there is no reason to believe that Congress has ever reenacted the result

Reconciliation Act of 1989, Pub. L. 101-239, sec. 7641, 103 Stat. 2106, 2379 (amending sec. 104 to remove punitive damages for cases involving nonphysical injuries or sickness from the sec. 104(a)(2) exclusion). Moreover, our decision in *Miller* that the phrase "any damages" included punitive as well as compensatory damages was reversed on the ground that punitive damages were not received *on account of* personal injuries because they required an additional showing of egregious conduct by the defendant. *Commissioner v. Miller,* 914 F.2d at 589-592.

or reasoning of *Riddle.* As the Supreme Court said in *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 431 (1955):

> It is urged that re-enactment of §22(a) without change since the Board of Tax Appeals held punitive damages nontaxable in *Highland Farms Corp.,* 42 B.T.A. 1314, indicates congressional satisfaction with that holding. Re-enactment—particularly without the slightest affirmative indication that Congress ever had the *Highland Farms* decision before it—is an unreliable indicium at best. * * * [Citations omitted.[30]]

The long-standing judicial view of this subject is, if anything, contrary to the majority's reading of *Riddle v. Commissioner, supra.* In a reviewed opinion of the Board of Tax Appeals, decided about 3 years after *Riddle, N.V. Koninklijke Hollandische Lloyd (Royal Holland Lloyd) v. Commissioner,* 34 B.T.A. 830 (1936), the Board held that no part of a damage award, which included interest as damages for delay in payment, was includable in the recipient's gross income. In that case, the Royal Holland Lloyd vessel *Zeelandia,* on a voyage from South America to Holland by way of New York, had been detained in New York harbor by Federal authorities from October 22, 1917, until March 21, 1918. Congress granted relief by allowing Royal Holland Lloyd to sue for compensation in the U.S. Court of Claims, which in 1931 awarded a recovery of $446,826.22, which was paid in 1932, the taxable year at issue, together with interest in the amount of $84,531.73. The Board first held that the basic award was not taxable, on the ground that "the sum received by the petitioner remains the payment of a judgment for damages and does not constitute rent 'from property

---

[30] *In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 381-382 (1982), cited in the majority op. p. 130, the Supreme Court stated that

the fact that a comprehensive reexamination and significant amendment of the CEA left intact the statutory provisions under which the federal courts had implied a cause of action is itself evidence that Congress affirmatively intended to preserve that remedy. A review of the legislative history of the statute persuasively indicates that preservation of the remedy was indeed what Congress actually intended. [Fn. ref. omitted.]

Although Congress is presumed to be aware of judicial interpretations of a statute and to adopt them when it reenacts a statute without change, see *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n.8 (1975), it is highly unlikely that Congress had before it the issue in *Riddle v. Commissioner,* 27 B.T.A. 1339 (1933), when it reenacted sec. 104(a)(2) as it did when it reenacted the statute at issue in *Merrill Lynch.* Similarly, *Society of Plastics Indus. Inc. v. ICC,* 955 F.2d 722, 728-729 (D.C. Cir. 1992), and *Cannon v. University of Chicago,* 441 U.S. 677, 696-697 (1979) (both also cited in the majority op. p. 130 and note 10), concerned situations in which there was clear evidence or other indications that Congress was actually aware of the prior statutory interpretation that was in issue.

located in the United States.'" *Id.* at 834. The Board then went on to hold that no part of the payment was interest from sources within the United States, on the ground that

the "interest" was included in the judgment as part of just compensation for damages sustained. \* \* \* Here, the stipulation denominated the sum of $84,531.73 as the "amount received for damages measured by interest" and in its opinion the Court of Claims stated: "The plaintiff is entitled to interest, as has been said, because such allowance is 'rightful' and is necessary adequately to compensate it for the damage." \* \* \* Here the obligation of the United States is to make just compensation for the unlawful detention of the vessel. Just compensation for the damage so suffered requires that the party damaged be made whole. An integral part of a payment for such purpose is interest covering the period of detention. In such a case it is merely a convenient method of measuring the amount of one of the factors of damage. It is not a separable item of interest on an obligation. [*Id.* at 834-835; citations omitted.]

### F. *Authorities Arguably in Point*

In reaching our conclusion in *Aames v. Commissioner,* 94 T.C. 189 (1990), we relied on cases dealing with interest on condemnation awards. *Id.* at 192 (citing *Kieselbach v. Commissioner,* 317 U.S. 399 (1943); *Tiefenbrunn v. Commissioner,* 74 T.C. 1566 (1980); *Smith v. Commissioner,* 59 T.C. 107, 111-113 (1972); *Wheeler v. Commissioner,* 58 T.C. 459 (1972)). The question common to those cases was whether a taxpayer who had received a condemnation award could treat as capital gain, rather than as ordinary income, any interest or delay damages for the taking. Reviewing the taxability of a New York City condemnation award, the Supreme Court, in *Kieselbach v. Commissioner, supra,* held that any part of the amount received as "just compensation" that was payment for delay was ordinary interest income and would not receive capital gain tax treatment, even though paid as part of an award for the taking of a capital asset. As such, the interest was includable as ordinary income under a statutory predecessor of section 61(a)(4). *Id.* at 403.[31]

Absent section 104(a)(2) and its requirement that we focus on the tort or tortlike nature of the taxpayer's personal injury claim to determine the tax treatment of amounts

---

[31] See also *Ferreira v. Commissioner,* 57 T.C. 866, 872 n.7 (1972), where, in holding "blight damages" under a condemnation award to be taxable ordinary income, we said: "Under *Kieselbach* we need not conclude that the payment is 'interest' as such. If the $26,000 award was made because of the delay in compensating the petitioners for the taking of their property, it constitutes taxable income." Cf. *Midkiff v. Commissioner,* 96 T.C. 724 (1991).

received in compensation thereof, *United States v. Burke,* 504 U.S. ___, 112 S. Ct. 1867 (1992); *Downey v. Commissioner, supra; Threlkeld v. Commissioner,* 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988); sec. 1.104-1(c), Income Tax Regs., the reasoning in *Kieselbach* would not allow us to exclude the interest included in petitioners' award from gross income as damages for personal injuries. However, *Kieselbach* did not concern damages on account of personal injuries, and the Supreme Court, in that case, had no occasion to apply section 104(a)(2). Similarly, *Tiefenbrunn v. Commissioner, supra, Smith v. Commissioner, supra,* and *Wheeler v. Commissioner, supra,* do not concern section 104(a)(2) and therefore do not prescribe the rule to be applied under that provision.[32]

### G. *Stare Decisis*

Insofar as *Riddle v. Commissioner,* 27 B.T.A. 1339 (1933) and *Aames v. Commissioner, supra,* can be read to hold that all interest on personal injury damages is includable in gross income, we should no longer follow them.[33] Although we should not lightly decline to follow our precedents, *Riddle* and *Aames* are distinguishable in whole or in part from the case at hand, and have been undercut by recent developments. Therefore, taking the course I suggest would not violate the doctrine of stare decisis or any of its prudential and pragmatic underpinnings as outlined by the Supreme Court's plurality opinion in *Planned Parenthood v. Casey,* 504 U.S. ___, ___, 112 S. Ct. 2791, 2808-2809 (1992).[34] In any event,

---

[32] But see Abreu, *supra* at 388-389 (recognizing that prejudgment interest is damages but that it should be includable in gross income as compensation for delay in payment).

[33] Petitioners ask us to distinguish *Aames v. Commissioner,* 94 T.C. 189 (1990), on the ground that it involved not a suit for damages for personal injuries, but the taxpayer's malpractice claim against the attorney who negligently failed to obtain a proper settlement of the taxpayer's personal injury claim. It may also be noteworthy that the interest at issue in *Aames* did not begin to accrue until 8 years after the accident. I would not distinguish *Aames* on these grounds. The taxpayer's malpractice suit clearly had its origin in his claim for damages on account of personal injury, and there was some element of prejudgment interest in the award that he finally obtained. We should meet the issue head on and overrule *Aames* by announcing that we will no longer follow it with respect to prejudgment interest.

[34] In *Planned Parenthood v. Casey,* 504 U.S. ___, ___, 112 S. Ct. 2791, 2808-2809 (1992), the Supreme Court stated that when it "reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case." The considerations are (1) "whether the rule has proved to be intolerable simply in defying practical workability"; (2) "whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and

stare decisis is not an "inexorable command", *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 405-411 (1932) (Brandeis, J., dissenting), but a principle of policy. Therefore, in light of latter-day related developments in the interpretation of section 104(a)(2) excluding from gross income backpay awards received in actions based upon tort or tortlike rights, as exemplified by *Rickel v. Commissioner,* 900 F.2d 655, 661-663 (3d Cir. 1990), affg. in part and revg. in part 92 T.C. 510 (1989), and *Pistillo v. Commissioner,* 912 F.2d 145 (6th Cir. 1990), revg. T.C. Memo. 1989-329, and to which we acceded in *Downey v. Commissioner, supra* at 168, this is an appropriate occasion to shift course. The correct interpretation of section 104(a)(2) is to exclude from gross income all amounts received through the prosecution of a personal injury claim based on tort or tort type rights. Sec. 1.104-1(c), Income Tax Regs. Under this interpretation, mandatory statutory prejudgment interest on damages received in a tort or tortlike action for wrongful death or other "personal injuries or sickness" is excluded from gross income.

## II. *Deductibility of Attorney's Fees*

As the majority point out, the parties have agreed that if the interest portion of the award is includable in gross income, the attorney's fees allocable to the taxable interest are deductible under section 212(1). As a result, the deductible portion of the attorney's fees is not deductible "above the line" in arriving at adjusted gross income, and is subject to the 2-percent floor of section 67 because section 212(1) deductions are not among the "above the line" deductions enumerated in section 62.

Following respondent's lead, the majority cite *Church v. Commissioner,* 80 T.C. 1104, 1110-1111 (1983); *Metzger v. Commissioner,* 88 T.C. 834, 860 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); and *Stocks v. Commissioner,* 98 T.C. 1 (1992), apparently for the propo-

---

add inequity to the cost of repudiation"; (3) "whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine"; and (4) "whether facts have so changed or come to be seen so differently, as to have robbed the old rule of significant application or justification". This case is governed by the third consideration set forth above.

sition that the *Church* apportionment formula should be used to determine the correct deduction:

Total attorney's fees   x   $\dfrac{\text{Nonexempt income}}{\text{Total award}}$   =   Deductible fees

Petitioners did not argue this issue other than to preserve the point that, if any part of the interest should be held taxable, the attorney's fees allocable thereto would be deductible.

Although it might initially appear that the proper allocation of the attorney's fees is a cut-and-dried proposition, some aspects of the question do deserve further attention. It is not self-evident that a pro rata apportionment should be used to compute the deductible interest.

Petitioners' contingent fee agreement with the attorneys who represented them in the wrongful death action is not part of the stipulated record in this case. We do know that the total award of $2,254,741.70 was disbursed as follows:

| | |
|---|---:|
| Attorney's fees | $749,535.72 |
| Costs | 6,134.53 |
| Petitioners' receipts (gross) | 1,499,071.45 |
| Total | 2,254,741.70 |

It is clear that the agreed attorney's fees were one-third ($33\frac{1}{3}$ percent) of the gross award, as it had been reduced by costs:

| | |
|---|---:|
| Gross award | $2,254,741.70 |
| Less: Costs | 6,134.53 |
| Net award before fees | $\frac{1}{3} \times 2,248,607.17$ |
| Attorney's fees | 749,535.72 |

At first blush, this computation would seem to confirm that a pro rata *Church* apportionment would be appropriate. The $33\frac{1}{3}$ percent attorney's contingent fee was calculated on the entire amount of the award, without any differentiation between the basic damages and the statutory interest. See sec. 265(a)(1). However, some additional observations are in order.

First, the fact that the attorney's contingent fee agreement did not differentiate between basic damages and statutory

interest in computing the fee reinforces my view (expressed in part I) that statutory interest on the basic damages is part of the damages for the purposes of the section 104(a)(2) exclusion.

Second, the pro rata *Church* apportionment is not the only way to go. Two other possibilities deserve consideration: One would disallow any deduction for attorney's fees; the other would allow them as a deduction by applying them, dollar for dollar, up to (but not in excess of) the taxable interest portion of the award. There are authorities that could support either of these approaches.

Authority for total disallowance of the deduction is found in the treatment of attorney's fees paid to obtain condemnation awards. Inasmuch as the majority rely on *Kieselbach v. Commissioner,* 317 U.S. 399 (1943), and its progeny, see majority op. p. 127 and *supra* pp. 141, 156-157, to support their conclusion that statutory interest in this case is taxable as such rather than part of the excludable damages, authorities on the treatment of attorney's fees to obtain condemnation awards may be relevant. This Court's view is that a property owner's expenses incurred to increase a condemnation award are capital expenditures because they fundamentally relate to the transfer of property. *Mosby v. Commissioner,* 86 T.C. 190 (1986); *Casalina Corp. v. Commissioner,* 60 T.C. 694, 703 (1973), affd. per curiam 511 F.2d 1162 (4th Cir. 1975). This has led to the surprising conclusion that, because such fees are capital expenditures, they may not be used to any extent to offset taxable interest awarded in the condemnation proceeding. *Madden v. Commissioner,* 514 F.2d 1149 (9th Cir. 1975); *Fulks v. Commissioner,* T.C. Memo. 1989-190. In *Fulks* we justified this conclusion on grounds that could be advanced to justify full disallowance of the attorney's fees in this case:

Petitioners' attorney's fees were for services in connection with obtaining the jury award. Interest on the jury award accrued as a matter of right so that it cannot be said that the attorney's services made any direct contribution to the interest element. Thus there is no basis for allocating any part of the fee to the collection of interest. *Petit v. Commissioner,* 8 T.C. 228, 236-237 (1947). Therefore, the attorney's fees in this case were capital expenses deductible solely from the jury award. [Fn. refs. omitted.]

Our views on the treatment of attorney's fees in condemnation awards are at variance with our views on their treatment in personal injury actions. The views expressed in *Fulks* also do not apply to the facts of this case (even though interest accrues as a matter of right under the Michigan statute) because the fees obviously increased by 33⅓ cents for each dollar of interest, a fact that supports a pro rata apportionment of the fees. But this variance also casts doubt on the correctness of the majority's decision on the main issue in this case. The Court's lack of consistency in deciding the deductibility of attorney's fees in personal injury and condemnation cases reinforces my view that the condemnation cases do not prevent prejudgment interest in personal injury cases from being excluded from gross income as part of the damages.

Irrespective of whether the amount taxable is the postjudgment interest (approximately $30,000, see *supra* note 11), the amount by which the entire interest portion of the award exceeded the interest that accrued from the date of the original judgment ($1,253,607.17 − $360,777.41 = $892,829.76), or the entire interest portion of the award ($1,253,607.17), I think there is a proper basis for allowing the attorney's fees to be deducted, dollar for dollar, from the taxable interest. There is support for this approach under Michigan law, in that one of the rationales for statutory interest advanced by the Michigan courts is that it helps to defray costs and attorney's fees incurred in order to obtain the award. *Old Orchard by the Bay v. Hamilton Mut. Ins. Co.,* 454 N.W.2d 73, 75-76 (Mich. 1990); *Denham v. Bedford,* 287 N.W.2d 168, 174 (Mich. 1980). This approach resonates sympathetically with our observation about the similar purposes of punitive damages in *Miller v. Commissioner,* 93 T.C. at 341. This approach would also be consistent with one of the possible methods of allocating the elements of the settlement referred to by the U.S. Court of Appeals for the Fourth Circuit in *Commissioner v. Miller,* 914 F.2d at 592, as an alternative to a pro rata apportionment. Under this approach, the punitive damages awarded by the jury that the Court of Appeals held taxable could have been reduced dollar

for dollar.[35] Analogous authority for such approach to allocating the attorney's fees between the taxable and nontaxable portions of the award could be found in *Fincke v. Commissioner,* 39 B.T.A. 510 (1939).[36]

In conclusion, I would hold: (I) That the prejudgment interest portion of the award is excluded from gross income under section 104(a)(2) as personal injury damages; and (II) that the attorney's fees are deductible dollar for dollar to the extent of the portion of the award included in gross income.

COLVIN, *J.,* agrees with this dissenting opinion.

---

[35] Inasmuch as punitive damages are much more speculative, and subject to attack on appeal, it might be reasonable to expect that it was the punitive damages that were reduced by agreement of the parties in a post-trial pre-appeal settlement. But see *Miller v. Commissioner,* T.C. Memo. 1993-49 (on remand).

[36] *Fincke v. Commissioner,* 39 B.T.A. 510 (1939), applied basis in full to the sale portion of a part gift-part sale, a result that was made inapplicable to part charitable contributions-part sales of appreciated property by sec. 1011(b), enacted by the Tax Reform Act of 1969, Pub. L. 91-172, sec. 201(f), 83 Stat. 564. Compare sec. 1.1011-2, Income Tax Regs. with sec. 1.1015-4(a), Income Tax Regs.