USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1254

 JOSEPH S. ROZPAD AND KATHLEEN M. ROZPAD,
 Petitioners, Appellants,

 v.

 COMMISSIONER OF INTERNAL REVENUE,
 Respondent, Appellee.
 ____________________

No. 98-1269

 FLORIANO DIBIASIO AND ANGELA DIBIASIO,
 Petitioners, Appellants,

 v.

 COMMISSIONER OF INTERNAL REVENUE,
 Respondent, Appellee.

 APPEALS FROM THE UNITED STATES TAX COURT
 
 [Hon. Maurice B. Foley, Judge]
 

 Before
 
 Selya, Boudin and Lipez, Circuit Judges.
 

 Justin S. Holden, with whom Kimberly L. O'Brien and Justin S.
Holden & Associates, Inc., were on brief, for appellants.
 Regina S. Moriarty, Attorney, Tax Division, U.S. Dep't of
Justice, with whom Loretta C. Argrett, Assistant Attorney General,
and Bruce R. Ellisen, Attorney, Tax Division, were on brief, for
appellee.

August 25, 1998

 SELYA, Circuit Judge. These appeals require us to
determine whether the appellants, Joseph and Kathleen Rozpad and
Floriano and Angela DiBiasio, must pay federal income tax on
portions of the monies they received after settling their
respective medical malpractice cases. Pointing to earlier jury
verdicts and ensuing judgments in the cases, the Commissioner of
Internal Revenue (the Commissioner) determined that a portion of
each settlement corresponded to prejudgment interest and assessed
deficiencies based on the appellants' failure to pay tax thereon. 
Despite the fact that the judgments to which the Commissioner
alluded had been abrogated by the subsequent settlements, the Tax
Court upheld the challenged deficiencies. See Rozpad v.
Commissioner, 74 T.C.M. (CCH) 1264 (1997). So do we.
I. BACKGROUND
 The parties submitted these cases on a stipulated record. 
We briefly recount the essential facts.
 A. The Rozpads.
 Kathleen Rozpad underwent surgery in 1989, with less than
auspicious results. She and her husband sued the surgeon in a
Rhode Island state court. In 1992, a jury awarded Mrs. Rozpad
$2,000,000 in damages and also awarded $65,000 to her husband. The
trial court reduced Mrs. Rozpad's award to $650,000, and she agreed
to remit the excess. The court then entered a final (but
reviewable) judgment for $965,250, which included $250,250 in
prejudgment interest mandated by R.I. Gen. Laws 9-21-10 (1985).
 During the appeal period, the Rozpads and the surgeon
negotiated a global settlement for $800,000 without any discussion
of, or reference to, tax consequences. They filed a stipulation
with the court which recited that "[t]he above-entitled action is
hereby dismissed, no interest, no costs." After payment of
attorneys' fees and costs, the Rozpads netted $438,887.13. They
reported no portion of the settlement on their 1992 federal income
tax return.
 In 1994, the Commissioner issued a notice of deficiency,
asserting that a portion of the settlement constituted taxable
prejudgment interest and should have been so reported in 1992.
 B. The DiBiasios.
 Floriano DiBiasio underwent surgery in 1982, but the
operation did not go well. He sued the surgeon for malpractice in
a Rhode Island state court and a jury awarded him $700,000 in
damages. The trial court entered a final (but reviewable) judgment
for $1,272,810, which included $572,810 in prejudgment interest
mandated by R.I. Gen. Laws 9-21-10. During the appeal period,
the parties settled the case for $1,000,000 and filed a stipulation
with the court nearly identical to that filed in the Rozpad case. 
There was no discussion of, nor reference to, tax consequences. 
After payment of attorneys' fees and costs, Mr. DiBiasio netted
$552,539.79. The DiBiasios did not report any part of the
settlement on their 1989 federal income tax return.
 On February 23, 1994, the Commissioner issued a notice of
deficiency, asserting that a portion of the settlement constituted
taxable prejudgment interest which should have been (but was not)
reported in the year 1989.
 C. Proceedings Below.
 Both the Rozpads and the DiBiasios filed timely petitions
for redetermination in the Tax Court. The Tax Court consolidated
the two cases. It thereafter rejected the petitioners' contentions
and entered judgment for the Commissioner. These appeals followed.
II. DISCUSSION
 This case involves the interplay of sections 61 and
104(a)(2) of the Internal Revenue Code (26 U.S.C.). The former
section provides for the taxation of all income "from whatever
source derived . . . including, but not limited to . . . (4)
Interest." 26 U.S.C. 61. The latter section excludes from
taxation "the amount of any damages received (whether by suit or
agreement and whether as lump sums or as periodic payments) on
account of personal injuries or sickness." 26 U.S.C. 104(a)(2). 
As between the two provisos, section 61's broad mandate constitutes
the general rule and applies presumptively to all monetary
accretions unless the recipient can show that a specific exclusion
pertains. See Commissioner v. Schleier, 515 U.S. 323, 328 (1995);
Delaney v. Commissioner, 99 F.3d 20, 23 (1st Cir. 1996). Thus, the
petitioners in this case must carry the devoir of persuasion to
demonstrate that section 104(a)(2) limits the tax liability that
section 61 presumptively imposes. Their task is daunting because
all exclusions from taxation must be narrowly construed. SeeCommissioner v. Jacobson, 336 U.S. 28, 49 (1949).
 Our consideration of the petitioners' offerings proceeds
in three segments. First, we mull their claim that the
Commissioner (and the Tax Court) erroneously attributed a portion
of their settlements to prejudgment interest. Second, we consider
their claim that, in all events, prejudgment interest on
compensatory awards in personal injury actions should not be
taxable at all. Finally, we address the DiBiasios' contention that
the Commissioner acted out of time in notifying them of the
ostensible deficiency. Throughout, we scrutinize the Tax Court's
findings of fact for clear error and examine its conclusions of law
de novo. See State Police Ass'n of Mass. v. Commissioner, 125 F.3d
1, 5 (1st Cir. 1997).

 A. Allocating Prejudgment Interest.
 The petitioners' flagship claim posits that, inasmuch as
the trial court judgments in the malpractice actions were annulled
by stipulation and never became enforceable, the funds that they
received can only be classified as lump-sum personal injury
settlements (and, therefore, wholly excludable from federal income
taxation under section 104(a)(2)). Put another way, the
petitioners contend that, in the absence of an enforceable judgment
(i.e., one as to which all avenues of direct review have been
exhausted, either by unsuccessful appeals or the running of the
applicable appeal period) that includes interest, the Commissioner
unreasonably chose to "go behind" the settlement agreements and
improvise an artificial allocation.
 The case law, though sparse, seems to draw a well-
conceived line that refutes the petitioners' challenge. When the
interest component of a personal injury settlement is difficult to
delineate, there is every reason for courts (and the Commissioner)
to defer to section 104(a)(2) and treat the entirety as free from
tax. After all, a settlement of a claim for personal injuries
almost inevitably will take into account a multitude of factors
(e.g., the nature of the injuries, the measure of damages,
attendant pain, the economic loss, the prognosis for the future,
the strength or weakness of the victim's case on liability, the
immediacy of the victim's need for funds, the depth of the
tortfeasor's pocket, the presence or absence of legal
representation, the costs of trial, the extent of anticipated
delays, and the availability vel non of punitive damages and/or
prejudgment interest), and the parties typically will not assign
independent monetary values to each of these factors. To
complicate matters further, some of these factors (e.g., the costs
of trial) would not themselves bear prejudgment interest. Thus,
the absence of an allocation renders it too speculative for a
court, in hindsight, to assign independent weight to each relevant
factor and isolate a reliable figure representing prejudgment
interest.
 On the other hand, when the interest component of a
personal injury settlement can be delineated with accuracy and ease
 as when there has been a jury verdict and an ensuing judgment
that contains separate itemizations of damages and interest a
subsequent settlement that does not purport to make a different
allocation is quite logically viewed as including a pro rata share
of interest. See Robinson v. Commissioner, 70 F.3d 34, 38 (5th
Cir. 1995), cert. denied, 117 S. Ct. 83 (1996); Delaney, 99 F.3d at
24 n.3. In this hermeneutic, the parties have settled a claim for
a liquidated amount and it is not unfair to assume, in the
absence of a contrary allocation, see, e.g., McShane v.
Commissioner, 53 T.C.M. (CCH) 409 (1987), that interest and damages
compose the same proportion of the settlement as of the antecedent
judgment. Cf. Lyeth v. Hoey, 305 U.S. 188, 196 (1938) (explaining
that amounts received in compromise of a claim are treated for tax
purposes in the same manner as would have been the case had the
taxpayer-plaintiff litigated and won the suit); Alexander v. IRS,
72 F.3d 938, 942 (1st Cir. 1995) (similar). That assumption has
particular force where, as here, the appeal period had not run and
the settlement amount exceeded the amount of the damages
recovered. This concatenation of circumstances leaves no doubt
but that the settlement includes some prejudgment interest.
 Our decision two years ago in Delaney paves the way for
the result that we reach today. Delaney is particularly
instructive with respect to the petitioners' argument that the
Commissioner improperly went behind their settlement agreements. 
We determined there that the court had the right indeed, the duty
 to look beyond the "language subscribed to by the parties." 
Delaney, 99 F.3d at 23; accord Alexander 72 F.3d at 942; Robinson,
70 F.3d at 37-38.
 Delaney is also instructive on another point. In that
case, the taxpayers garnered a jury verdict for $175,000 in a
personal injury suit, to which the trial court added $112,000 in
statutorily mandated prejudgment interest. See Delaney, 99 F.3d at
22. During the pendency of the ensuing appeal, the parties settled
the case for $250,000, without addressing the tax consequences of
the settlement in any way. See id. When the Delaneys failed to
report any portion of the settlement on their federal income tax
return for the appropriate year, the Commissioner constructed a
fraction, using as the numerator the amount of prejudgment interest
set by the trial court ($112,000) and as the denominator the total
amount of the judgment ($287,000). He then multiplied the total
settlement ($250,000) by this fraction and assessed a deficiency on
the basis that the resulting product ($97,561) represented the
(taxable) interest component of the settlement. See id.
 The Tax Court sustained the Commissioner's determination,
as did we. See id. at 23. Specifically, we approved the
Commissioner's use of a ratio based on the judgment in apportioning
the undifferentiated settlement proceeds as between prejudgment
interest and compensatory damages. See id. at 25-26; accordRobinson, 70 F.3d at 38 (holding explicitly that the jury's verdict
furnishes "the best indication" of how to prorate an ensuing
settlement). Since the Commissioner used exactly the same
methodology in this case, our precedent forecloses the petitioners'
complaint about that methodology.
 Consistent with the authorities we have cited, we hold
that when an amount has been received in settlement of a claim
after the claim has been reduced to judgment, the judgment, albeit
not final, nonetheless furnishes an adequate guideline for
allocation by the Commissioner to the extent that it is composed of
both compensatory damages and prejudgment interest. See Delaney,
99 F.3d at 25-26; Robinson, 70 F.3d at 38.
 B. The Taxability of Prejudgment Interest.
 Having disposed of the petitioners' claim that no part of
their settlements constituted prejudgment interest, we turn to
their theory that prejudgment interest on a personal injury award
is itself an award of damages received on account of personal
injury, and thus excludable from federal income taxation by virtue
of section 104(a)(2).
 The petitioners accurately remark the tension between
sections 61 and 104(a)(2) a tension that we noted but did not
reconcile in Delaney, 99 F.3d at 26-27. Other courts, however,
have resolved this tension in a manner adverse to the petitioners'
position. See, e.g., Brabson v. United States, 73 F.3d 1040 (10th
Cir. 1996) (Coffin, J., sitting by designation); Kovacs v.
Commissioner, 100 T.C. 124 (1993), aff'd, 25 F.3d 1048 (6th Cir.
1994) (table). In both instances, final judgments in personal
injury cases had entered that specifically included prejudgment
interest; the taxpayers sought to avoid taxation of the prejudgment
interest, arguing that it was indistinguishable from the
compensatory personal injury awards; and the courts held that the
portions of the recoveries allocated to interest were taxable. SeeBrabson, 73 F.3d at 1046-47; Kovacs, 100 T.C. at 133.
 The petitioners suggest that Kovacs, the principal Tax
Court precedent on which the Commissioner relies, is a hoax, built
upon an improper analogy to earlier Tax Court cases dealing with
post-judgment, rather than prejudgment, interest. See, e.g., Aamesv. Commissioner, 94 T.C. 189 (1990); Church v. Commissioner, 80
T.C. 1104 (1983). This claim is easily dispatched. It is true
that many of the cases discussed in Kovacs deal with post-judgment
interest but the petitioners fail to persuade us that this
distinction makes a meaningful difference. Interest, whether pre-
or post-judgment, compensates for delay in payment, and is
specifically included in the litany of income items subject to
taxation under section 61. Thus, essentially the same rationale
supports the includability of both species of interest for tax
purposes. The Tax Court merely applied existing precedent to a new
version of an old problem and reached a sensible result. SeeKovacs, 100 T.C. at 129-30.
 The petitioners also claim that the Kovacs court
overlooked the legislative history of section 104(a)(2). They
assert that the 1982 amendment to that section, which specifically
approved exclusion from taxation of periodic payments received on
account of personal injuries, demonstrates that Congress intended
to exempt the interest portion of personal injury settlements from
taxation. This strikes us as wishful thinking. There is nothing
in the text of the amendment that necessitates (or even suggests)
such a conclusion. Indeed, it seems likely that Congress's
decision not to tax periodic payments reflects recognition of the
administrative difficulties of such a task and nothing more. SeeBrabson, 73 F.3d at 1045 n.5; Kovacs, 100 T.C. at 132-33.
 The petitioners next turn to Schleier, 515 U.S. 323, and
United States v. Burke, 504 U.S. 229 (1992), in their effort to
persuade us that Brabson and Kovacs are wrongly decided. In both
instances, the Court held that backpay awards in workplace
discrimination cases were not excludable under section 104(a)(2)
because they were not received on account of personal injuries. 
See Schleier, 515 U.S. at 336-37; Burke, 504 U.S. at 242. Glossing
over these holdings, the petitioners focus on a passage in
Schleier, 515 U.S. at 329-30, where the Court observed in dictum
that lost wages recovered in a suit for bodily injuries are
excludable from taxation under section 104(a)(2). In the
petitioners' view, this passage implies that all amounts received
as part of a personal injury award are similarly sheltered.
 Like the Brabson court, 73 F.3d at 1046, we think that
this generous reading is unwarranted. In both Schleier and Burke,
the Court recognized that there are two elements which a taxpayer
must establish to qualify for an exclusion under section 104(a)(2). 
First, damages must be incurred through a tort or a tort-like
incident causing personal injury. See Schleier, 515 U.S. at 336-
37; Burke, 504 U.S. at 237. Second, those damages must be received
on account of that personal injury. See Schleier, 515 U.S. at 333-
34; Burke, 504 U.S. at 234; see also Delaney, 99 F.3d at 27. It
follows inexorably that the decisive question here cannot be the
extent to which prejudgment interest is "like" or "unlike" lost
wages, but, rather, whether prejudgment interest, under the
circumstances of this case, can pass the Court's two-part test.
 Applying this test, we conclude that prejudgment interest
is not "damages" received "on account of" a personal injury, and
is, therefore, taxable. In reaching this conclusion, we place
considerable emphasis on the nature of the funds that the
Commissioner found taxable. Section 104(a)(2) excludes from
taxation "the amount of any damages received . . . on account of
personal injury or sickness." (emphasis supplied). Language is not
infinitely elastic, and here, the disputed prejudgment interest
simply does not comprise "damages" within the meaning of section
104(a)(2). We explain briefly.
 Under the applicable Rhode Island statute, prejudgment
interest is awarded in all civil cases, not just in personal injury
cases. See R.I. Gen. Laws 9-21-10. This interest is separate
and distinct from damages, and is awarded mainly to compensate for
delay in payment. See Foster v. Quigley, 179 A.2d 494, 495 (R.I.
1962) (holding that prejudgment interest for damages to the person
"is not of the substance of the right of action but exclusively an
incident attached thereto by legislative fiat after such right has
been adjudicated"); accord Balian v. Allstate Ins. Co., 610 A.2d
546, 549-50 (R.I. 1992) (reaffirming Foster and acknowledging that
"the definition of damages may not always include interest"); DiMeov. Philbin, 502 A.2d 825, 826 (R.I. 1986) (explaining that the
legislature's intent in providing for prejudgment interest was to
encourage settlement of tort cases without delay).
 To be sure, federal law not state law supplies the
rule of decision in determining whether a given payment is subject
to federal income tax. See Helvering v. Stuart, 317 U.S. 154, 162
(1942); Lyeth, 305 U.S. at 194. Nevertheless, a state's
characterization of such a payment can inform the federal
determination, see Brabson, 73 F.3d at 1044, and Rhode Island's
characterization of prejudgment interest comports with the idea,
venerated in federal jurisprudence, that the principal purpose of
prejudgment interest is to compensate for a delay in payment. SeeWest Virginia v. United States, 479 U.S. 305, 310 n.2 (1987);
Kovacs, 100 T.C. at 128. To that extent, then, federal and state
law converge.
 We also conclude that prejudgment interest fails the
second prong of the Court's two-part test as it is not received "on
account of" a personal injury. As the Schleier Court explained, a
recovery attributable to lost wages is not taxable because "the
accident causes a personal injury which in turn causes a loss of
wages." 515 U.S. at 330. Conversely, the personal injury that a
victim experiences in, say, a medical malpractice case, does not
cause a delay in payment. Rather, the injury causes damages, thus
creating the fund on which interest for delay in payment is owed. 
See Kovacs, 100 T.C. at 128-29. So viewed, the second half of the
Court's test strongly suggests that, unlike lost wages, prejudgment
interest should not be excluded from federal income taxation by
operation of section 104(a)(2).
 Other indicia point persuasively in the same direction. 
These signposts are neatly synthesized in Judge Coffin's thoughtful
opinion in Brabson, 73 F.3d 1040. We rehearse three such indicia. 
First, prejudgment interest is not a traditional remedy for
personal injuries. See id. at. 1046. The Supreme Court has
accorded considerable significance to this factor, see, e.g.,
Schleier, 515 U.S. at 329 (focusing on "typical recovery in a
personal injury case" in applying the two-part test), and so do we.
 Second, and relatedly, the Brabson court attached great
weight to the fact that prejudgment interest was not available at
common law in personal injury cases. Indeed, such a boon was
unheard-of in 1919 when Congress enacted the direct lineal ancestor
of section 104(a)(2), section 213(b)(6) of the Revenue Act of 1918,
ch. 18, 40 Stat. 1057, 1066 (1919). Since the exclusion for
personal injury awards has been handed down almost verbatim from
1919 forward, Congress could not conceivably have intended the
exclusion to apply to prejudgment interest. Cf. Monessen S.W. Ry.
Co. v. Morgan, 486 U.S. 330, 338-39 (1988) (disallowing recovery of
prejudgment interest in FELA cases because, when Congress enacted
the FELA in 1908, the common law did not allow prejudgment interest
in personal injury suits).
 Third, the Brabson court read Schleier as requiring "a
direct link between the injury and the remedial relief" for the
exclusion to apply, Brabson 73 F.3d at 1047, and found no such link
between personal injuries and prejudgment interest. "Time becomes
the relevant factor, not the injury itself the longer the
procedural delay, the higher the amount." Id. Thus, prejudgment
interest is inextricably intertwined with the very delay that
severs the connection between prejudgment interest and the
underlying personal injury.
 To say more would be supererogatory. Mindful of the
panoply of factors favoring taxability, and mindful, too, of the
default rule that all exclusions from income must be construed
parsimoniously, see Schleier, 515 U.S. at 328, we rule that
prejudgment interest on compensatory damage awards in personal
injury actions falls within the broad mandate of section 61, and
that section 104(a)(2) provides no safe haven for taxpayers. 
Because the Commissioner's (and the Tax Court's) determination that
such prejudgment interest is subject to federal income tax jibes
with the weight of authority and rests upon a sound construction of
the Tax Code, we uphold it.
 C. The Statute of Limitations.
 The DiBiasios raise a final issue: whether the notice of
deficiency issued to them by the Commissioner was barred by the
statute of limitations contained in 26 U.S.C. 6501 (which
provides that, subject to certain exceptions, all federal income
tax deficiencies "shall be assessed within 3 years after the
[taxpayer's] return was filed").
 The facts are these. The tax year in question is 1989. 
The DiBiasios filed their return for that year on April 16, 1990. 
They reported no part of the settlement proceeds as taxable income. 
The Commissioner issued the deficiency notice for that tax year on
February 23, 1994. Accordingly, if the general three-year
limitation period obtains, the notice came too late.
 The Commissioner parries by invoking an exception to the
general three-year limitation period. To achieve this exception,
the Commissioner must show that a particular tax return improperly
omits from gross income "an amount properly includible therein
which is in excess of 25 percent of the amount of gross income
stated in the return." If the Commissioner makes such a showing,
"the tax may be assessed . . . at any time within 6 years after the
return was filed." Id.
 We affirm the Tax Court's determination that the
Commissioner has made the requisite showing. The DiBiasios
reported gross income of $123,382 on their 1989 return. The
Commissioner found that the DiBiasios should have reported an
additional $450,036 in gross income attributable to prejudgment
interest garnered in connection with the malpractice settlement
(subject, of course, to appropriate deductions for attorneys' fees
and costs). This amount obviously exceeds twenty-five percent of
the gross income actually reported. Since the Commissioner
correctly determined that this amount was subject to tax under
section 61 and that no exclusion applied, the Commissioner had six
years within which to serve a deficiency notice.
 In arguing for a contrary result, the DiBiasios make two
points. Our earlier discussion defenestrates the first that, by
operation of section 104(a)(2), the imputed interest component of
the malpractice settlement was not taxable at all. The second 
that the $450,036 amount was "relatively arbitrary" is
unpersuasive. The amount mirrored precisely the ratio of
prejudgment interest to compensatory damages in the original jury
award. In the absence of a contrary suggestion by the taxpayer,
that ratio furnished the Commissioner with an appropriate guideline
for determining what portion of the settlement comprised interest. 
See Delaney, 99 F.3d at 25.
III. CONCLUSION
 We need go no further. The petitioners' remaining
arguments do not merit discussion. For the reasons advanced above,
we conclude that both the Commissioner's determination and the Tax
Court's affirmance of that determination are amply supported.

Affirmed.